## No. 25561

### The People of the State of Colorado v. Jorge Grana
(527 P.2d 543)

Decided May 20, 1974. Rehearing granted June 17, 1974. On rehearing October 29, 1974, Court adheres to original opinion.

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Taussig, McCarthy & Snyder, Michael J. McCarthy, for defendant-appellant.

MR. JUSTICE KELLEY delivered the opinion of the Court.

Defendant was found guilty in Boulder District Court by a jury of possession for sale of a narcotic drug and possession with intent to dispense a dangerous drug and sentenced to the penitentiary. Because the contraband was seized in violation of the defendant's Fourth Amendment rights, we reverse the convictions.

On July 1, 1971, Detective William Spotts of the Boulder Police Department observed a Porsche automobile with

Florida license plates driving in the "Hill" area of Boulder. Spotts obtained the license number of the automobile and ran a routine NCIC (National Crime Information Center) check on it while following in his unmarked car. The dispatcher notified Spotts that the vehicle was a "hit" although it was not clear whether the vehicle was stolen or whether a wanted person was in the vehicle.

About this time the Porsche stopped and the passenger attempted to exit. Spotts stopped behind the vehicle and ordered the passenger back into the vehicle. Other police assistants arrived shortly thereafter, and while defendant (who had been driving) and his passenger were being detained by the other officers, Spotts received definite confirmation that the Porsche had been reported stolen in Florida.

Spotts then informed defendant and the passenger that they were under arrest for investigation of auto theft. He advised them of their constitutional rights, and they were taken to the police department by another officer for booking.

While Spotts was waiting for a tow truck to remove the vehicle to the police impound lot, he began what he later testified was a "search incident to the arrest" of the vehicle. He searched the passenger compartment, looking under the front seats and in the glove compartment. He then opened the front trunk of the Porsche and observed three pieces of luggage. He began to examine the contents of a flight bag, but decided to postpone his search until the vehicle was secure in the impound lot as he began to receive harassment from some of the residents in the area where the car was stopped.

A tow truck arrived and removed the vehicle to the impound lot which is fenced and patrolled by dogs. Spotts followed the vehicle to the impound lot and continued his search there. We note that while there was testimony as to standard police procedures regarding the impoundment and release of stolen vehicles, there is no evidence in the record that this search was a standard impoundment inventory search.

Spotts again opened the flight bag, and looking into zippered inside pockets, found defendant's passport in one pocket and a greenish brown powder in the other. Spotts testified that his experience as a narcotics officer led him to believe that the powder was either hashish residue or organic mescaline residue. He then searched behind the electrical cowling, which is behind the firewall of the vehicle, and found a brown paper bag containing L.S.D. He also found additional L.S.D., some heroin and cocaine, and capsules containing the same greenish brown powder that was found in defendant's flight bag secreted in the heater-blower system of the vehicle. These drugs formed the basis for defendant's convictions, and were introduced in evidence over his objection.

The record is clear that the only information Detective Spotts had at the time of this search was that defendant had been driving an automobile which had been reported stolen in Florida. There is no evidence linking the defendant to other criminal activity or to any drug related offenses.

## I.

The People assert, at the outset, that the defendant lacks standing to challenge the search of the stolen automobile. However, the People do not challenge defendant's standing to object to the search of his luggage in which he retained a reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Weisenberger,* 183 Colo. 353, 516 P.2d 1128 (1973). The greenish brown residue found in defendant's flight bag was a vital link connecting defendant with the contraband subsequently found in the heater-blower system of the automobile. Thus, if the intrusion into defendant's luggage was constitutionally impermissible, defendant's conviction must be reversed. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

## II.

As noted above, Detective Spotts had no information concerning the defendant except that he had been driving a car which had been reported stolen. Pursuant to the arrest of

the defendant he searched the passenger compartment of the automobile which was under the immediate control of the defendant. The search, however, continued into the trunk area and into the defendant's personal effects in his luggage. This exceeds the reasonable scope of a search incident to an arrest and must be justified, if at all, on some other basis. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

■ Although Detective Spotts' motivation for the intensive search undertaken in this case is not clear, we will assume that he was engaged in an inventory search. Cases involving inventory search are: *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); *People v. Trusty,* 183 Colo. 291, 516 P.2d 423 (1973). The rationale of these cases is that an inventory of property found in an impounded vehicle is not an unreasonable search. Such a search is supported by the legitimate police concern of protecting property in their custody, or, as in *Cady, supra,* retrieving suspected weapons which may present a danger to the community. These searches are reasonable, because the police are not engaged in ferreting out criminal activity, but are engaged in what is most accurately characterized as an incident of a "caretaking" activity. Thus, if while engaged in such an activity they discover evidence in "plain view," it need not be excluded at a subsequent trial. *People v. Trusty, supra.*

■ In this case, however, the evidence seized was not in "plain view." It was found within a zippered compartment within a closed flight bag. To discover this evidence it was necessary to enter a constitutionally protected area of privacy without a warrant and without probable cause. This is an unreasonable search under the Fourth Amendment. *Faubion v. United States,* 424 F.2d 437 (10th Cir. 1970); *Brett v. United States,* 412 F.2d 401 (5th Cir. 1969); *Mozzetti v. Superior Court,* 4 Cal.3d 699, 484 P.2d 84, 94 Cal.Rptr. 412 (1971); *State v. Keller,* 97 Or. Adv. Sh. 237,

510 P.2d 568 (1973); *State v. Gwinn,* 301 A.2d 291 (Del. 1973); *Mayfield v. United States,* 276 A.2d 123 (D.C. App. 1971). *See also Williams v. United States,* 412 F.2d 729 (5th Cir. 1969); *Pace v. Beto,* 469 F.2d 1389 (5th Cir. 1972); Annot. 48 A.L.R. 3d 537.

■ Under the facts of this case, where the vehicle being searched was in an impound lot which was fenced and patrolled by dogs, an inventory search must be limited to those items in plain view in the automobile. Any further intrusion is an unreasonable search under the Fourth Amendment.

The judgment of the district court is reversed.

MR. CHIEF JUSTICE PRINGLE does not participate.

MR. JUSTICE ERICKSON concurs in the result only.