## No. 26533

### The People of the State of Colorado v. John C. Roddy

(532 P.2d 958)

Decided March 10, 1975.

Dale Tooley, District Attorney, Second Judicial District, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

Felix D. Lepore, for defendant-appellee.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an interlocutory appeal by the district attorney from an order of the Denver District Court granting defendant's motion to suppress certain narcotics and dangerous drugs seized during a search of the defendant's car. We reverse.

On March 16, 1974, at approximately 3:00 a.m. in the City and County of Denver, the defendant, John C. Roddy, was ob-

served by a member of the Denver Police Department in violation of a traffic ordinance. Rather than heeding the police signals to stop, the defendant fled at a high rate of speed. The subsequent vehicular chase reached speeds in excess of 110 miles per hour. During the course of the chase and while still in the City of Denver, Officer Spickard of the Denver Police Department unsuccessfully attempted to stop the defendant by pulling his police cruiser in front of the defendant's car. Officer Spickard joined the pursuit which finally ended in the City of Aurora where the defendant was arrested. Officer Spickard was the second pursuit car on the scene of the arrest and remained with the defendant's car while the other police officers took the defendant and his passenger to Aurora Police Department for booking.

Officer Spickard summoned a private tow truck to take the defendant's car to an impound lot. While waiting for the arrival of the tow truck, Officer Spickard made an inventory of the defendant's automobile pursuant to police department regulations. The officer testified that it was standard procedure to inventory the contents of an automobile, under the circumstances, for the purpose of protecting the property of the vehicle's owner as well as the custodian. In plain view were a gun case and a bank money bag lying on the floor on the driver's side half way between the seat and the pedals. Officer Spickard opened the gun case in order to record the gun's registration number and opened the bank bag to determine whether it contained money, and if so, to count it. Instead of finding money, Officer Spickard found what he believed to be a quantity of marijuana. Officer Spickard continued the inventory procedure during which he located a bottle of white tablets in the unlocked glove compartment. These tablets were later determined to be amphetamines. The officer gathered numerous objects from the rear seat of the vehicle including a leather coat labeled with the defendant's name. While checking the coat pockets for valuables, Officer Spickard discovered marijuana debris. The final step of the inventory procedure was to check the trunk to determine whether there was a spare rim and tire and to list any other items of personal property. When Officer Spickard opened the trunk of the automobile he observed an open grocery bag containing marijuana.

An information was filed against the defendant charging him

with felonious possession of a narcotic and possession of a dangerous drug. C.R.S. 1963, 48-5-2[1] and 1971 Perm. Supp., C.R.S. 1963, 48-8-2.[2] The defendant pled not guilty to both counts. Prior to trial the defendant moved the court to suppress the evidence seized from his car alleging that it had been taken during the course of an unlawful exploratory search. An evidentiary hearing was held and the defendant's motion was granted, the trial court relying on *People v. Grana,* 185 Colo. 126, 527 P.2d 543 (1974). We reverse.

It is apparent from the trial judge's remarks during the suppression hearing and from his ruling on the motion to suppress that the different results which obtained in *Grana* and in *People v. Trusty,* 183 Colo. 291, 516 P.2d 423 (1973) were confusing. Also, that *Grana,* being the last expression on the subject, was controlling. The circumstances in the two cases were sufficiently dissimilar to dictate different results. The circumstances here are more akin to *Trusty* and it is controlling here.

The trial court's confusion is not surprising. Courts generally have found it difficult to maintain that consistency in this area of the law which is the hallmark of normalcy in other areas of the law. In *Trusty* we approved inventory searches, relying on *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) and the cases cited therein. For an analysis of the leading cases on inventory searches, holding that, under certain circumstances, inventory searches are not unreasonable, see the discussion of Mr. Justice Lee in *Trusty.*

In *Grana,* unlike *Trusty,* the police officer attempted to justify his search of the vehicle on the ground that it was incident to the arrest of the defendant as in *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). We felt that the search, under the circumstances of that case, exceeded the bounds of reasonableness. We recognized, however, that:

"The rationale of these cases is that an inventory of property found in an impounded vehicle is not an unreasonable search. Such a search is supported by the legitimate police concern of protecting property in their custody, . . . . These searches are

---

[1]Section 12-22-302, C.R.S. 1973.
[2]Section 12-22-404, C.R.S. 1973.

reasonable, because the police are not engaged in ferreting out criminal activity, but are engaged in what is most accurately characterized as an incident of a 'caretaking' activity. Thus, if while engaged in such an activity they discover evidence in 'plain view,' it need not be excluded at a subsequent trial. *People v. Trusty, supra.*"

■ In the instant case the police pursued and arrested the defendant without any indication or suspicion that he possessed quantities of contraband. This is similar to the situation in *Trusty*. The search was an inventory search from the outset. Officer Spickard, after the defendant and his passenger were arrested and left with the other officers for the police station to be booked for various traffic violations, had the responsibility of arranging to have the car impounded.

Denver Police Department regulations provide that when drivers are arrested,

"the officer will tow the car to the City Car Pound unless the driver is mentally capable and authorizes a responsible individual at the scene to take custody of the vehicle.

"The security of the vehicle and contents become the responsibility of the Police Department whenever removed from the owner's control.

"Officers shall make out a Vehicle Disposition Report Form #224 for each vehicle towed and shall list all articles left in the vehicle. They shall sign the report in the presence of the tow car driver who shall acknowledge same by his signature. Only spare tires, jacks, chains, etc., shall be left in any vehicle being towed to the Car Pound.

"All articles such as clothing, blankets, cameras, hand tools and other personal property shall be removed, inventoried and then delivered to the Property Bureau for safekeeping . . . ."

The United States Supreme Court before *Dombrowski* sanctioned inventory searches. In *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), where evidence was discovered during the course of an inventory being conducted pursuant to a local police regulation, the Supreme Court upheld a state court ruling denying a motion to suppress, stating:

"The precise and detailed findings of the District Court, accepted

by the Court of Appeals, were to the effect that the discovery of the card was not the result of a search of the car, but a measure taken to protect the car while it was in police custody. Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances."

*See Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

We hold that the contraband discovered during the inventory procedure was lawfully seized and that such seizure was not violative of the defendant's Fourth Amendment rights.

■ The defendant has questioned the authority of a Denver police officer to conduct an inventory search in the City of Aurora. However, Officer Spickard began chasing the defendant in Denver and remained in fresh pursuit until the automobile was finally stopped in Aurora. Hence, Officer Spickard's authority to partake in the arrest and related matters in the form of an inventory search existed beyond the boundaries of his original jurisdiction by virtue of C.R.S. 1963, 39-3-106.[3]

The ruling of the trial court is reversed and the cause is remanded with directions to overrule the motion to suppress.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. In my view, the United States and Colorado Constitutions prevent the police from conducting an exploratory search of an automobile under the artifice of an inventory search. *U.S. Const.* amend. IV; *Colo. Const.* Art. II, Sec. 7. The restraints of reasonableness imposed by the Fourth Amendment on inventory searches have been breached and convoluted by the course approved by the majority opinion today.

The Supreme Court of the United States has not suggested in any of its opinions that the police may conduct a full search of every vehicle which comes into their custody, even though probable cause is absent. On the contrary, the Court has carved out only very limited exceptions to the constitutional requirement that searches be conducted pursuant to a warrant premised on a finding of probable cause determined by a neutral and detached

---

[3]Section 16-3-106, C.R.S. 1973.

magistrate. In *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), the Court indicated that evidence seized which was in plain view could be properly admitted at trial. Thus, where the police had taken steps to protect the car in custody and had seen a registration card which was "plainly visible," and which was not seized as the result of a search of the car, the incriminating material would not be suppressed. In the instant case, the narcotics which were taken by the police officer were not in plain view, but were uncovered in the course of a thorough search of the car and by opening and searching a glove compartment, a gun case, a bank bag, the pockets of a jacket found lying on the back seat of the car, and a grocery bag which was in the trunk of the car. Although the police officer could have inventoried the items which he saw in plain view, the search into the seized items was unreasonable, because it was not necessary as a protective measure.

The Court did uphold the constitutionality of a search of a glove compartment of an impounded vehicle in *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), but in so doing, it did not extend blanket approval of inventory searches. Rather, the Court concluded that when a vehicle was lawfully impounded and would have to be held in custody for longer than four months pending forfeiture and constituted evidence of crime, it was not unreasonable for a search to be effected without a warrant. Clearly, *Cooper v. California, supra,* should not, and cannot, be extended to the facts in this case. The automobile in this case was not impounded for any length of time and was not held as evidence of a crime.

Possession of the defendant's vehicle does not empower the police to invade his legitimate expectations of privacy. *See* Model Rules of Law Enforcement, Searches, Seizures and Inventories of Motor Vehicles, Rule 603(b) and Commentary (1974). Because the search conducted of Roddy's vehicle was not based on a finding of probable cause and was not effected in order to protect the police or the public at large, the evidence seized should be suppressed and the trial court affirmed. *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 906 (1973); *People v. Trusty,* 183 Colo. 291, 516 P.2d 423 (1973) (Erickson, J., dissenting). *Cf. People v. Glaubman,* 175 Colo. 41, 485 P.2d 711

62

(1971). *See Mozzetti v. Superior Court,* 94 Cal. Rptr. 412, 484 P.2d 84 (1971).

MR. JUSTICE DAY has authorized me to say that he joins in this dissent.