## No. 27387

### The People of the State of Colorado v. Terrill Alan Counterman

(556 P.2d 481)

Decided November 22, 1976.

John F. Healy, District Attorney, W. Terry Ruckriegle, Deputy, for plaintiff-appellant.

L. Don Wyman, for defendant-appellee.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

This interlocutory appeal was taken by the district attorney after the trial court granted the defendant's motion to suppress. We affirm the ruling of the trial court.

The defendant is charged with the felonious possession of cocaine[1] and with possession of a dangerous drug.[2] The charges against the defendant were based on evidence which was seized in the course of an inventory search of the defendant's stationwagon. The defendant was stopped by a Colorado State Patrol Officer for driving 65 miles per hour in a 55 mile per hour zone. Because of the defendant's belligerent conduct at the time he was stopped, the officer contacted the Colorado State Patrol and learned that the defendant was wanted on a felony fraud by check charge. The officer radioed for assistance and then arrested and jailed the defendant. The officer also ordered the stationwagon towed to a nearby gas station. After the defendant was jailed, the stationwagon was searched and an inventory was made.

A knapsack was discovered inside the car. The knapsack was admittedly tied shut. The officer untied the knapsack and rummaged through the contents until he discovered the drugs, which provided the basis for the charges in this case.

At the evidentiary hearing, the officer testified that the purpose of an inventory search is to protect the personal property and possessions of the owner or occupant of the vehicle and also to protect the police officers against spurious claims by the owner or occupant of theft from the vehicle when the vehicle is taken into custody.

The contraband or drugs seized were not in plain view. Moreover, it is not asserted that probable cause existed for the search because it is conceded that the search was for inventory purposes only. *Compare People v. Lorio*, 190 Colo. 373, 546 P.2d 1254 (1976) (no claim of inventory purpose and no exigent circumstances to excuse a warrantless search). No claim is made that it was a search incident to an arrest. The sole issue is the limit that is to be placed on an inventory search.

██ We note first that the validity of the examination of the contents of the knapsack in this case is measured by the constraints of the Fourteenth Amendment and *Colo. Const.* Art. II, sec. 7. The owner clearly had an expectation of privacy with regard to his sealed knapsack which was sufficient to invoke constitutional protections against unreasonable police intrusion. *See South Dakota v. Opperman*, 428 U.S. 364, 96

---

[1] Section 12-22-302, C.R.S. 1973.
[2] Section 12-22-404, C.R.S. 1973 (1975 Supp.).

S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[3]

■ The validity of inventory searches, when constrained within the limits of "reasonableness," has consistently been upheld by this court. *See People v. Roddy*, 188 Colo. 55, 532 P.2d 958 (1975); *People v. Trusty*, 183 Colo. 291, 516 P.2d 423 (1973). The key issue underlying the concept of inventory searches of automobiles is what limits mark the boundaries of "reasonableness" in this context. *See South Dakota v. Opperman, supra, citing People v. Trusty, supra.*

A review of our prior decisions indicates limits upon the scope of an inventory search. In *People v. Grana*, 185 Colo. 126, 527 P.2d 543 (1974), the police officer opened the trunk of a vehicle and began to rummage through a flight bag. We held that:

"[I]f while engaged in such [a "caretaking"] activity they discover *evidence in 'plain view,'* it need not be excluded at a subsequent trial. *People v. Trusty, supra.*

"In this case, however, the evidence seized was not in 'plain view.' *It was found within a zippered compartment within a closed flight bag.* To discover this evidence it was necessary to enter a constitutionally protected area of privacy without a warrant and without probable cause. This is an unreasonable search under the Fourth Amendment. . . .

"Under the facts of this case, where the vehicle being searched was in an impound lot which was fenced and patrolled by dogs, an inventory search must be limited to those items in plain view in the automobile." [Emphasis added.]

In *People v. Trusty, supra*, a police officer unlocked the trunk of a properly impounded automobile and discovered a dead body. We there held:

"We find the trial court's reliance on *Mozzetti v. Superior Court*, 4 Cal.3d 699, 94 Cal.Rptr. 412, 484 P.2d 84 (1971), misplaced. The facts of that case are dissimilar to this case in that *Mozzetti* involved items of evidence *contained within a satchel located in the back seat of an automobile, not within 'plain view.'* Here, the dead body was within plain view in the open trunk."

Most recently, in *People v. Roddy, supra*, an inventory search was approved in which we held:

---

[3] It has become commonplace to emphasize the diminished expectation of privacy which attaches to an automobile. *See, e.g., South Dakota v. Opperman, supra.* We find that, when speaking of sealed containers located within an automobile in today's society — in which nearly every person necessarily spends a great deal of time traveling in automobiles — the attempt to distinguish levels in a continuum of privacy expectations is academic. The focus in this case is on the particular expectation of privacy which was intruded upon — the privacy represented by a sealed knapsack — rather than that attaching to the automobile itself.

"In plain view were a gun case and a bank money bag lying on the floor on the driver's side half way between the seat and the pedals. Officer Spickard opened the gun case *in order to record the gun's registration number and opened the bank bag to determine whether it contained money*, and if so, to count it. Instead of finding money, Officer Spickard found what he believed to be a quantity of marijuana. Officer Spickard continued the inventory procedure during which he located a bottle of white tablets in the *unlocked glove compartment*. These tablets were later determined to be amphetamines. The officer gathered numerous objects from the rear seat of the vehicle including a leather coat labeled with the defendant's name. While checking the coat pockets for valuables, Officer Spickard discovered marijuana debris. The final step of the inventory procedure was to *check the trunk to determine whether there was a spare rim and tire* and to list any other items of personal property. When Officer Spickard opened the trunk of the automobile he observed an *open grocery bag* containing marijuana." [Emphasis added.]

In *South Dakota v. Opperman, supra*, the Supreme Court of the United States recently upheld an inventory search in which the following factors were present: (1) the owner was not available to make other arrangements for the safe-keeping of his possessions inside the automobile, (2) the police officer's search was prompted by the presence of a watch lying upon the dashboard of the car and other valuables in plain view inside the vehicle, (3) the glove compartment in which contraband was found was unlocked. The Court summarized the basis for its holding:

"[O]nce the policeman was lawfully inside the car to secure the personal property in plain view, it was not unreasonable to open the unlocked glove compartment, to which vandals would have ready and unobstructed access once inside the car."

The trial judge, in this case, in granting the motion to suppress, relied upon the following language in *Mozzetti v. Superior Court, supra* (Burke, J. concurring):

"As pointed out in the numerous Court of Appeal cases cited by the majority, the routine practice of making such inventory inspections is reasonably necessary to safeguard the owner's property from loss or damage, and to protect the police and storage bailee from unfounded claims. *Although, as the majority point out, the foregoing considerations do not furnish the police an excuse for rummaging through closed suitcases or sealed packages*, the police do have the authority, and indeed the responsibility, to inspect and inventory all items of personal property in plain sight within the vehicle and, if necessary to lock these items in the trunk or transfer them to some other secure place for safekeeping." [Emphasis added by the trial court.]

In order to define the parameters of "reasonableness" in this area, principles must be articulated which encompass these results and which provide

some guidance for lower courts.

While cognizant of the axiom that "[t]he test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts," *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) (Black, J., concurring and dissenting), we do not abandon the search for guiding the principles in this area. The legitimate purposes for inventory searches provide one measure of the limits of reasonable police intrusion. These purposes include (1) protection of the owner's or occupant's property, (2) protection of the police officers from liability based upon subsequent claims of missing or damaged property, *see South Dakota v. Opperman, supra*, and (3) protection of the police officers and the public from dangerous instrumentalities inside the car. *See Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *People v. Roddy, supra*. Another limiting factor is whether the "caretaking" or protective functions of the search are tainted as pretexts for "concealing an investigatory police motive." *South Dakota v. Opperman, supra*. The presence of a less intrusive alternative, such as the waiver by the owner of the security provided by an inventory search, has also been a significant factor. *See People v. Trusty, supra* (the automobile belonged to an absent "guy named Carpenter"); *South Dakota v. Opperman, supra* (owner "not present to make other arrangements for the safekeeping of his belongings."). Finally, the presence of items within "plain view" inside the car has often provided a basis for the intrusion. *See People v. Roddy, supra*.

Our prior cases reflect these principles at work. In *People v. Grana, supra*, the intrusion into a closed flight bag for objects not in plain view was held to be unreasonable. In *People v. Trusty, supra*, we approved the seizure of an item which was in plain view. In *People v. Roddy, supra*, the intrusion into the gun *case*, which was itself in plain view, was clearly justified in order to verify the reasonable suspicion that the contents were a dangerous instrumentality. The intrusion into the money bag was also legitimate insofar as it reasonably contained money which, by its very nature, must be counted in order to be satisfactorily inventoried. The pockets of the leather coat in *Roddy* were, in effect, open containers from which possessions might be easily lost. The glove compartments in both *Roddy* and *Opperman* were unlocked. Perhaps more important, glove compartments, like automobile trunks, are "containers" which cannot be secured beyond the ability to secure the automobile itself. Thus, insofar as the police had impounded the vehicle and had a proper basis for conducting an inventory search, the inventory purposes could not be attained without intrusion into these areas. *See People v. Roddy, supra; People v. Trusty, supra*.

The present case clearly falls outside of these guidelines. While the knapsack was itself in plain view, its contents were securely sealed and

completely unknown to the officer. The knapsack did not give any indication that its contents were dangerous or particularly valuable and in need of a special inventory. The legitimate purposes of the inventory search could have been fully accomplished by merely noting the item as a sealed knapsack. The defendant could have been offered the choice of a full inventory of the contents at the police station. The trial court also made the following finding:

"The court notes also that an inventory search is based upon a policy of protecting the police officer and the occupant of the vehicle taken into custody. In this case, it is somewhat difficult to see where that policy was furthered. Before making the inventory search of this vehicle, the control of the same, and necessarily of its contents, was turned over to a tow-truck operator and inventory search made some time later at a place to which the vehicle had been towed."

█ Both the Fourth Amendment of the United States Constitution and Article II, section 7 of the Colorado Constitution were violated by the search conducted in this case. Moreover, the fruits of this search were clearly within the "offending officer's zone of primary interest" and the deterrent function of the exclusionary rule is furthered by the suppression in this instance. *See United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

Ruling affirmed.