## No. 28455

## The People of the State of Colorado v.
## Mary Elizabeth Hicks and Tangier Eileen Billingsley

(590 P.2d 967)

Decided February 26, 1979.

Carroll E. Multz, District Attorney, Douglas A. Colaric, Chief Deputy, for plaintiff-appellant.

Sharp and Black, P.C., William S. Schurman, for defendant-appellee, Mary Elizabeth Hicks.

J. Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy, Richard T. Casson, Deputy, for defendant-appellee, Tangier Eileen Billingsley.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

After a preliminary hearing, defendants Mary Elizabeth Hicks and Tangier Eileen Billingsley were bound over to the district court for trial on charges of attempted theft (section 18-2-101, C.R.S. 1973 (1976 Supp.)), theft (section 18-4-401, C.R.S. 1973 (1976 Supp.)), and conspiracy (section 18-2-201, C.R.S. 1973 (1976 Supp.)). The defendants moved to suppress evidence which was seized in a warrantless search of a pickup truck. The women were in the truck enroute to Denver when the truck was stopped and an arrest was made. The district court granted the motion to suppress.

The district attorney brought this interlocutory appeal, asserting that the search was not made in violation of the Fourth Amendment, because

the items seized were obtained by the "routine inventory" procedure of the Steamboat Springs Police Department. The evidence produced at the suppression hearing supports the findings of the district court, and we, therefore, affirm. *People v. Huffman,* 189 Colo. 459, 541 P.2d 1250 (1975).

On February 8, 1978, Officer Alderen of the Steamboat Springs Police Department received a report that, on the previous day, three well-dressed black women had attempted to steal a ring from a local jewelry store. On that same day, the Steamboat Springs Police Department was informed that three well-dressed black women had stolen several items of clothing from a local leather goods shop. Further investigation revealed that three well-dressed black women had been seen driving a blue pickup truck in the Steamboat Springs area.

In the evening hours of February 8, 1978, Officer Alderen and Officer Lewis located the blue pickup truck and followed the truck to a local Holiday Inn. There, Alderen followed the defendants into the lobby, where he overheard a conversation among them which indicated that they were preparing to leave for Denver. Although Alderen testified that he believed he had probable cause to arrest the defendants at the hotel, he allowed them to leave the building, reenter the pickup truck, and drive away. Alderen and Lewis followed the defendants for a short distance and then stopped the truck. Prior to the stop, Alderen had briefly apprised Lewis of the facts regarding the two reported crimes and of his reasons for wanting to locate the defendants.

After the stop, Alderen arrested the defendants, handcuffed them, and took them to the police station. Before he left, Alderen instructed Lewis to impound the pickup truck, inventory its contents, and arrange for a tow truck to haul it to the police lot.

The internal operating procedures of the Steamboat Springs Police Department provide that:

"There will be a complete Vehicle Inventory done on *ALL* Vehicles which we are responsible for the custody of. This means on any arrest when a Party and Vehicle are separated there will be a Vehicle Impound Inventory done." (Emphasis in original.)

To enable police officers to carry out the department's directive on vehicle inventories, each officer is provided with a standard form, upon which he is to enter the relevant identifying characteristics of the vehicle being impounded. In addition, space is provided in the form to allow the officer conducting the inventory to list all items found in the vehicle.

Officer Lewis inventoried the defendants' truck in accordance with the prescribed procedures. While he was transcribing the truck's vehicle identification number from the door post, Lewis saw several items of clothing and a handbag behind the seat of the truck. Officer Alderen testified that those items were not in plain view and could only be seen by opening the door and looking behind the seat. Lewis seized the clothing

and the handbag and took them into his custody. Numerous other items were inventoried and left in the truck. The objects which Lewis seized were the subject of the defendants' motion to suppress.

A search conducted without a warrant is presumptively illegal unless it falls within certain narrowly defined categories. *People v. Neyra,* 189 Colo. 367, 540 P.2d 1077 (1975). We have recognized that a properly conducted inventory search of an automobile is valid and fits within such a category. *People v. Rutovic,* 193 Colo. 397, 566 P.2d 705 (1977); *People v. Counterman,* 192 Colo. 152, 556 P.2d 481 (1976); *cf. South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *see also State v. Opperman,* 247 N.W.2d 673 (S.D. 1976).

The district court, after an evidentiary hearing, held that there were no exigent circumstances at the scene of the stop which would justify a warrantless search. *People v. Lorio,* 190 Colo. 373, 546 P.2d 1254 (1976); *People v. Neyra, supra; People v. Railey,* 178 Colo. 297, 496 P.2d 1047 (1972). The district court also found that the police had time and the opportunity to secure a warrant before they searched the car. *People v. Hampton,* 196 Colo. 466, 587 P.2d 275 (1978). As noted above, Officer Alderen testified that the evidence which was seized was not in "plain view" at the time the pickup truck was stopped.

"[T]he defendants were under arrest; the defendants' automobile was in police custody; no danger existed that any evidence in the car would be removed or destroyed before a warrant could be secured; in short, no exigent circumstances existed. Thus, even if the evidence was in plain view, the police officers had time to secure a search warrant, and their failure to do so stripped them of lawful authority to enter the vehicle and seize the contested evidence." *People v. Lorio, supra* at 1257.

On appeal, the district attorney has attempted to justify the search as one which falls within the category of a "routine inventory search." The words "routine inventory search" are not a "talisman in whose presence the Fourth Amendment fades away." *Coolidge v. New Hampshire,* 403 U.S. 443, 461, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A properly conducted inventory search is constitutionally permissible. *People v. Counterman, supra; South Dakota v. Opperman, supra.* But "lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it." *Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The existence of a routinely required inventory procedure does not alone validate searches carried out pursuant to that procedure. If a warrantless inventory search were to be permitted "on any arrest when a Party and Vehicle are separated," the exception which allows a warrantless inventory of an automobile's contents would soon eclipse the rule that a search warrant is the *sine qua non* of a Fourth Amendment search. In short, an inventory procedure does not constitute a hunting license and does not authorize an

investigatory search.

■ In *People v. Counterman, supra,* we detailed the factors to be considered in determining whether an inventory search is constitutionally valid:

"The legitimate purposes for inventory searches provide one measure of the limits of reasonable police intrusion. These purposes include (1) protection of the owner's or occupant's property, (2) protection of the police officers from liability based upon subsequent claims of missing or damaged property, *see South Dakota v. Opperman, supra,* and (3) protection of the police officers and the public from dangerous instrumentalities inside the car. *See Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). . . . Another limiting factor is whether the 'caretaking' or protective functions of the search are tainted as pretexts for 'concealing an investigatory police motive.' *South Dakota v. Opperman, supra.* The presence of a less intrusive alternative, such as the waiver by the owner of the security provided by an inventory search, has also been a significant factor. *See People v. Trusty* [183 Colo. 291, 516 P.2d 123 (1973)] . . . *South Dakota v. Opperman, supra* (owner 'not present to make other arrangements for the safekeeping of his belongings.'). Finally, the presence of items within 'plain view' inside the car has often provided a basis for the intrusion . . . ." *Id.* at 484-485.

After hearing the evidence presented at the suppression hearing, the district court found that:

"The evidence is not conclusive that the officers had only the three *purposes* [of a valid inventory search] in mind and that the search was for 'caretaking' of purposes only. Therefore, in this case, the arresting officers cannot rely solely on the inventory procedure to effect a valid search under these circumstances."

■ We have concluded that the district court's suppression order must be sustained, since there is evidence in the record to support the court's findings. The arrest of the defendants was properly effected. However, the district court found that the "inventory search" carried out by Officer Lewis was not conducted solely for the purpose of carrying out the three permissible objectives of an inventory search enumerated in *People v. Counterman, supra.*

Officer Lewis was aware of the nature of the charges against defendants before he made the search. He knew that the defendants were suspected of stealing clothing from a leather goods store. He also knew that a search of the pickup truck could uncover articles of clothing which could be used to incriminate the defendants. The district court's conclusion that Lewis' purpose in carrying out an "inventory search" was not motivated by a desire to protect the defendants' property, protect the police department from liability, or protect police officers and the public from dangerous instrumentalities that might be found within the pickup truck is

thus supported by the record. The search was motivated, not by any of these objectives, "but rather with the calculated intention of securing incriminating evidence against the defendants." *People v. Rutovic, supra,* at 706. Lewis' "inventory" of the pickup truck's contents was merely a pretext, designed to conceal an investigatory search.

"Despite the fact that the type of search coincided with an official department regulation, the search here was tantamount to a general rummaging. Its focus was accusatory, being an exploration seeking to discover incriminating evidence against the defendants." *Id.* at 706.

Moreover, the trial court had the opportunity to observe the demeanor of the witnesses and to weigh their credibility. *People v. Huffman, supra.*

Accordingly, we affirm the district court order which granted the defendants' motion to suppress.

MR. CHIEF JUSTICE HODGES, MR. JUSTICE GROVES and MR. JUSTICE PRINGLE dissent.

MR. JUSTICE GROVES dissenting.

I respectfully dissent.

The background of the order to suppress is not fully set out in the majority's opinion. Initially, the court was ready to rule that the motion to suppress should be granted on the ground that the police had time to obtain a search warrant after taking the car to the impound lot. However, the court took the motion under further advisement upon being informed that the search had been conducted at the scene of the arrest.

Then the court ruled that the motion to suppress should be denied on the ground that the search was proper because it was incident to a valid arrest.

Upon motion for reconsideration, the court reversed itself, saying that the motion to suppress would be granted since no exigent circumstances had existed to justify the search.

Various justifications for the search were considered (and possibly confused) during the course of these rulings, but the only issue on appeal is whether the search was a valid inventory search. Regarding this issue, the district court noted that Colorado cases suggest three legitimate purposes of an inventory search: to protect property in the vehicle; to protect officers against claims regarding the property; and to protect police officers and the public from dangerous instrumentalities. *People v. Counterman,* 192 Colo. 152, 556 P.2d 481 (1976). Here, the court concluded:

"The evidence is not conclusive that the officers had only the three purposes in mind and that the search was for 'caretaking' purposes only. Therefore, in this case, the arresting officers cannot rely *solely* on the in-

ventory procedures to effect a valid search under these circumstances." (Emphasis added.)

The district court found that the officers were required to inventory the vehicle and that they did so in accordance with the Steamboat Springs Police Department's Vehicle Impound Procedure. In other cases, we have found police regulations requiring inventories of vehicles reasonable. *People v. Roddy,* 188 Colo. 55, 532 P.2d 958 (1975); *People v. Trusty,* 183 Colo. 291, 5l6 P.2d 423 (1973); *See also South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) where the United States Supreme Court stated:

"The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable."

The conclusion that the officers followed standard procedures is not contested on appeal.

Consequently, the only question is whether the standard procedures were used as a pretext to conceal an investigatory purpose on the part of the officers conducting the search. We have stated that an exploratory search intended to ferret out incriminating evidence does not fall within the exception to usual Fourth Amendment requirements simply because it is conducted according to a standard policy regarding inventory searches. *People v. Rutovic,* 193 Colo. 397, 566 P.2d 705 (1977); *People v. Meeks,* 194 Colo. 214, 570 P.2d 835 (1977).

This court has invalidated inventory searches only, however, when there was clear evidence supporting a finding of an investigatory, rather than a caretaking purpose. In *Rutovic, supra,* police searched a closed zippered compartment and an officer testified that his purpose was investigatory. In *Counterman, supra,* the officer inventoried the contents of a knapsack which was securely sealed. Both searches were deemed invalid. In *Meeks, supra,* the scope of the search was limited appropriately for a caretaking purpose and the record disclosed no bases for supposing the officer's motives to be improper. The search was upheld.

The facts here are more akin to the situation in *Meeks, supra,* than those in *Rutovic* or *Counterman, supra.* The officer here testified that he conducted a routine inventory search and that he first observed items that had been reported stolen while obtaining the vehicle's identification number. There was no testimony that the officers inventoried items in closed compartments or containers improperly. Nor was there any testimony to the effect that their purposes were investigatory. The fact that officers are aware of thefts and recognize stolen property in the course of a valid inventory does not render it an improper search or, reflexively, alter their original purpose for initiating the inventory.

The district court's holding as to a justified inventory search indicates it misperceives the import of previous cases which held the searches

invalid. In those cases, either the scope of the search or the officers' testimony indicated the search was investigatory. Without such indications here, there was no evidentiary basis for holding that the officers' search was not necessarily for caretaking purposes. The officers statements that they conducted an inventory search were uncontroverted.

On appeal, defendants only allege that seizure of certain items — which they seek to suppress — during the course of the inventory indicates the officers were rummaging for evidence. However, the same information which gave the officers probable cause to arrest the defendants also made them aware that certain items they were inventorying would quite possibly serve as evidence in a subsequent prosecution. Seizing such items is neither improper, nor, in the absence of other indications, probative of investigatory motives. *People v. Roddy, supra; People v. Trusty, supra.*

I would reverse the order granting the motion to suppress.

MR. CHIEF JUSTICE HODGES and MR. JUSTICE PRINGLE join in this dissent.