**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Paul HAUSEMAN, Defendant–Appellee.**

**No. 94SA383.**

Supreme Court of Colorado, En Banc.

June 30, 1995.

---

**76**

David J. Thomas, Dist. Atty., First Judicial Dist., Donna Skinner Reed, Chief Appellate Deputy Dist. Atty., Golden, for plaintiff-appellant.

Julie Evans Anderson, Denver, for defendant-appellee.

Justice KIRSHBAUM delivered the Opinion of the Court.

The People filed this interlocutory appeal pursuant to C.A.R. 4.1 seeking review of the trial court's order granting a motion filed by the defendant, Paul J. Hauseman, to suppress evidence seized from his vehicle by law enforcement officers. Because we conclude that the trial court applied an erroneous legal standard, we reverse the order and remand the case to the trial court for further proceedings.

**I**

On December 16, 1993, a North Metro Drug Task Force ("NMDTF") detective received information from a confidential informant that Hauseman was then at work at a business establishment located on South Colorado Boulevard in Denver, Colorado, and that a pound of marijuana was or would be located behind the rear seat of Hauseman's car. The detective, who knew that Hauseman was the subject of an outstanding traffic warrant[1] and lived in the city of Wheatridge, Colorado, relayed all of this information to NMDTF detective James Lorentz. Lorentz in turn contacted Wheatridge police officer David W. Piermattei, and Lorentz and Piermattei agreed that NMDTF officers would follow Hauseman into Wheatridge where officer Piermattei would arrest him.

Hauseman was placed under surveillance at his place of employment by Lorentz and other NMDTF officers. When Hauseman entered his car and drove away from his place of employment, the NMDTF officers followed him. When Hauseman entered Wheatridge, Lorentz notified Piermattei that Hauseman was traveling west on I–70 and was speeding. Piermattei subsequently stopped Hauseman, placed him under arrest, and impounded Hauseman's vehicle pursuant to standard Wheatridge Police Department procedures.[2] Before the vehicle was towed away, Piermattei conducted an inventory search thereof. In the course of searching the hatchback area behind the back seat of the vehicle,[3] Piermattei found a cardboard whiskey box containing approximately one pound of marijuana.

Hauseman was charged with the offenses of possession with intent to distribute marijuana, in violation of section 18–18–406(8)(b),

1. A warrant previously issued for Hauseman's arrest indicated that he had been found in contempt of court in a case related to the offense of driving while ability impaired by alcohol or drugs.

2. Wheat Ridge Police Department procedure 9.50.03 provides that when the owner of a vehicle is arrested and separated from his or her vehicle the arresting officer may: 1) tow the vehicle; 2) leave the vehicle at the location of the arrest if it does not present a traffic hazard; or 3) release the vehicle to a responsible person at the request of the owner. Pursuant to department procedure 9.50.12, all towed vehicles must be taken to the towing company's impound lot. Pursuant to department procedure 9.50.02(D), all towed vehicles must be inventoried.

3. Piermattei initially asked Hauseman for a key to the hatchback portion of the car. When Hauseman informed him that that key was unavailable, Piermattei lifted a plastic panel behind the back seat.

8B C.R.S. (1994 Supp.), and possession of greater than eight ounces of marijuana, in violation of section 18–18–406(4)(b), 8B C.R.S. (1994 Supp.). He subsequently filed a motion to suppress the marijuana on the ground that the search of his vehicle constituted a warrantless investigatory search disguised as an inventory search in violation of the Fourth Amendment to the United States Constitution and article II, section 7 of the Colorado Constitution.

At the conclusion of a hearing on the motion, the trial court found that Lorentz and Piermattei had conducted the search of Hauseman's car substantially pursuant to standard Wheatridge Police Department procedures. The trial court also found that in conducting the search Lorentz and Piermattei had "dual purposes" to both inventory the car and locate the marijuana. Although the trial court found that the search "was a valid inventory" search, the trial court stated that the officers' "concern about finding the marijuana was of more significance than their concern about making the arrest on the warrant." Relying on *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), and *People v. Rutovic*, 193 Colo. 397, 566 P.2d 705 (1977), the trial court concluded that the officers had not conducted the inventory search in good faith and that the inventory search was illegal. The court therefore granted Hauseman's motion to suppress the introduction of the marijuana into evidence.

## II

### A

■ This case requires a determination of whether the arrest of Hauseman and the resulting inventory search of his vehicle violated the Fourth Amendment to the United States Constitution.[4] The Fourth Amendment provides in pertinent part as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....

U.S. Const. amend. IV. A warrantless search and any resulting seizure are presumptively unreasonable unless the search falls within certain recognized exceptions to the warrant requirement. *Horton v. California*, 496 U.S. 128, 133 n. 4, 110 S.Ct. 2301, 2306 n. 4, 110 L.Ed.2d 112 (1990); *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973); *People v. Boff*, 766 P.2d 646, 648 (Colo.1988). The warrantless search of a vehicle lawfully impounded by law enforcement officials designed to produce an inventory of the contents of that vehicle and conducted pursuant to routine administrative procedures is one such exception. *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *Dombrowski*, 413 U.S. at 439, 93 S.Ct. at 2527; *People v. Hicks*, 197 Colo. 168, 171, 590 P.2d 967, 968 (1979); *People v. Rutovic*, 193 Colo. 397, 398, 566 P.2d 705, 706 (1977); *see Illinois v. Lafayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 367–76, 96 S.Ct. 3092, 3096–3101, 49 L.Ed.2d 1000 (1976).

■ Warrantless searches as well as searches conducted pursuant to a warrant must be reasonable to satisfy Fourth Amendment requirements. *Lafayette*, 462 U.S. at 643, 103 S.Ct. at 2608; *Boff*, 766 P.2d at 648. Inventory searches conducted pursuant to standard police department procedures which regulate an officer's discretion in conducting such searches are in general considered reasonable. *Florida v. Wells*, 495 U.S. 1, 5, 110 S.Ct. 1632, 1635–36, 109 L.Ed.2d 1 (1990); *Bertine*, 479 U.S. at 377, 107 S.Ct. at 744; *cf. United States v. Hellman*, 556 F.2d 442, 444 (9th Cir.1977) (inventory search of impounded car invalid because not conducted

4. In his suppression motion Hauseman contended that the inventory search violated the Fourth Amendment to the United States Constitution and article II, section 7, of the Colorado Constitution. Although the trial court indicated the view that the standards for determining whether the search violated Colorado's constitutional provisions did not differ from the standards applicable to the federal constitutional issue, the trial court did not articulate its basis for suppressing the evidence. In the absence of a statement indicating that the decision rests on state grounds, we will presume that the court relied on federal law. *Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1982); *People v. Inman*, 765 P.2d 577, 578 (Colo.1988).

pursuant to departmental procedures). In *Bertine*, 479 U.S. 367, 107 S.Ct. 738, the Supreme Court held that an inventory search of a closed backpack in an impounded vehicle conducted pursuant to standard police department procedures did not violate Fourth Amendment principles. The Court stated that because the inventory search furthered "police caretaking procedures designed to secure and protect vehicles and their contents within police custody,"[5] such searches are generally reasonable. *Id.* at 372, 107 S.Ct. at 741. The Court explained that the scope of an inventory search is constrained by the requirement that any discretion granted law enforcement officers in conducting such a search be "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* at 375, 107 S.Ct. at 743; *accord Wells*, 495 U.S. at 4, 110 S.Ct. at 1635.[6]

■ However, strict adherence to standard police department procedures in conducting an inventory search does not necessarily satisfy the Fourth Amendment reasonableness standard. *See Opperman*, 428 U.S. at 376, 96 S.Ct. at 3100; *Hicks*, 197 Colo. at 171, 590 P.2d at 971; *Rutovic*, 193 Colo. at 398, 566 P.2d at 706. We have previously recognized that "[t]he words 'routine inventory search' are not a 'talisman in whose presence the Fourth Amendment fades away.'" *Hicks*, 197 Colo. at 171, 590 P.2d at 969 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971)). The Supreme Court has suggested that it will more carefully scrutinize the behavior of law enforcement officers conducting an inventory search pursuant to standard police department procedures where there is evidence that the officers "acted in bad faith or for the sole purpose of investigation." *Bertine*, 479 U.S. at 372, 107 S.Ct. at 741. Thus an inventory search may

not be conducted as a subterfuge for a criminal investigation to avoid more stringent requirements, such as the requirement of procuring a search warrant, which apply to investigatory searches. *Wells*, 495 U.S. at 4, 110 S.Ct. at 1635 (inventory search must not be used as a ruse for general rummaging or to discover incriminating evidence); *Bertine*, 479 U.S. at 372, 107 S.Ct. at 741 (inventory search might be invalid if officers act in bad faith or for the sole purpose of investigation); *Opperman*, 428 U.S. at 376, 96 S.Ct. at 3100 (inventory search may not be used as a pretext to conceal an improper investigatory search).

■ An arrest, even if valid, may also be a pretext to disguise otherwise impermissible law enforcement activity. A pretextual arrest is *per se* illegal and evidence obtained as a result of that arrest is inadmissible. *State v. Hoven*, 269 N.W.2d 849, 853 (Minn.1978). In *Hoven*, police officers received information that the defendant was preparing to leave the state and was carrying controlled substances in his vehicle. The defendant was placed under surveillance and two hours later was arrested on two outstanding arrest warrants for minor traffic offenses. Although the defendant consented to a search of his vehicle that resulted in the seizure of contraband, the court suppressed the evidence on the ground that "the pretextual nature of the arrest made the subsequent search of defendant's vehicle constitutionally impermissible." *Id.* at 852. Although the court assumed that the officers were acting pursuant to standard police department procedures, it concluded that the inference was "inescapable that the arrest was made and timed primarily to facilitate the warrantless search." *Id.* at 853. The officers in *Hoven* had deliberately refrained from arresting the defendant on an earlier occasion so that they

5. Courts have generally sustained inventory searches as reasonable police intrusions because of the three purposes which underlie the need for such intrusion: 1) to protect the arrestee's property while in police custody; 2) to protect police against claims for stolen or lost property; and 3) to protect the arrestee and other community members, including police, from instrumentalities which might pose a danger. *Opperman*, 428 U.S. at 371, 96 S.Ct. at 3098; *accord Bertine*, 479 U.S. at 372, 107 S.Ct. at 741; *Inman*, 765 P.2d 577 at 579 (Colo.1988).

6. The reasonableness of an inventory search does not depend on whether law enforcement officers used the least intrusive alternative available to them in impounding and inventorying a vehicle. *Bertine*, 479 U.S. at 374, 107 S.Ct. at 742; *United States v. Johnson*, 815 F.2d 309, 314 (5th Cir. 1987).

might later arrest him in or by his car and thus gain an opportunity to inventory the car after the arrest. *Id.* at 852–53.

■ In determining whether an officer's conduct is calculated to hide an improper motive, the officer's subjective intent in carrying out the challenged arrest and resulting inventory is not controlling. *People v. Ratcliff,* 778 P.2d 1371 (Colo.1989). *But see Bertine,* 479 U.S. at 372, 107 S.Ct. at 741 (if acting in bad faith, inventory search may be invalid). An officer's hope of finding incriminating evidence during an otherwise valid search does not, without more, indicate a pretextual motive for his or her conduct. *United States v. Johnson,* 815 F.2d 309, 315 (5th Cir.1987). Instead, " 'the pretext arises out of the fact that the evidence is found in a search which would not have occurred at all but for the manipulation of circumstances and events by the police because of their desire to conduct a search which could not otherwise be lawfully made.' " *Id.* at 315 (quoting [3] Wayne P. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 7.5(e), at 141 (2d ed. 1987)). Thus the inquiry must focus on the objective reasonableness of the officer's conduct, and the trial court must determine whether a reasonable officer in the particular circumstances of the case would have engaged in the challenged conduct absent an illegitimate motive. *Johnson,* 815 F.2d at 315.

For example, in *Amador–Gonzalez v. United States,* 391 F.2d 308, 315 (5th Cir. 1968), the Fifth Circuit Court of Appeals found that the arrest of the defendant for a minor traffic offense was in fact a pretext to conduct an otherwise impermissible investigatory search. Although the court acknowledged that the defendant had committed several traffic offenses during the course of a one-hour surveillance, the court noted that the arresting officers were narcotics detectives who would ordinarily not be engaged in enforcing traffic regulations and concluded that their actions were not objectively reasonable. *Id.* at 314. The court noted that although a delayed arrest is not necessarily

improper and may often constitute good police practice, the evidence clearly demonstrated that the arrest of Gonzalez was a pretext to enable the officers to search his vehicle. *Id.* at 314–15.

B

■ In this case the trial court found that Hauseman's vehicle was impounded pursuant to standard Wheatridge Police Department procedures,[7] that the inventory search was conducted for "dual purposes," and that the officers' "concern about finding the marijuana was of more significance than their concern about making the arrest on the warrant." The trial court then concluded that the officers' dual purposes in conducting the inventory search rendered that search invalid.

■ The fact that an officer has more than one purpose for conducting an inventory search is relevant to the determination of whether an arrest triggering the inventory search is merely a pretext to provide the officer with an opportunity to conduct an impermissible investigatory search. *Johnson,* 815 F.2d at 315; *Ratcliff,* 778 P.2d at 1377. Such fact is also relevant to the determination of whether the inventory search itself is a pretext for undertaking an investigatory search. *Johnson,* 815 F.2d at 315. However, the fact that an officer has dual purposes for conducting an inventory search is not dispositive of the question of whether the arrest or the search is pretextual. *Ratcliff,* 778 P.2d at 1379–80 (search not invalid where officer had objective, reasonable basis for protective stop and frisk even though officer also had purpose to search for and recover narcotics). The trial court's exclusive focus on the question of whether the officers had dual purposes in conducting the inventory search of Hauseman's vehicle was erroneous.

C

■ The question raised by Hauseman's suppression motion is whether the officers

---

7. The court found that the officers followed Wheatridge Police Department procedures generally though not "in all particulars." Hause-

man does not contend that this factor implicates concerns of constitutional dimension.

acted in an objectively reasonable manner in arresting Hauseman and in conducting an inventory search of his vehicle. *See Johnson,* 815 F.2d at 315.

In answering this question the trial court must initially determine whether Piermattei's conduct in arresting Hauseman was pretextual to permit the investigatory search Lorentz sought to achieve. The trial court found that at the time of the arrest Piermattei knew Hauseman was the subject of an outstanding warrant and that Hauseman "was driving into Wheatridge with a pound of marijuana in his car." The trial court did not resolve the issue of whether the arrest was made pursuant to the former or the latter purpose. In essence, the trial court did not determine whether Hauseman's arrest was pretextual. The evidence is conflicting with respect to this issue.[8]

 The trial court found that the officers had not operated entirely in good faith in conducting the inventory search. An inventory search conducted in the absence of good faith is constitutionally impermissible. *See Bertine,* 479 U.S. at 374, 107 S.Ct. at 742 (inventory search conducted in good faith satisfies the Fourth Amendment). However, the trial court also stated that the officers conducted a "valid inventory." It is not clear whether the trial court merely meant to indicate that the inventory search was "valid" because it was conducted pursuant to standard Wheatridge Police Department procedures or whether the trial court in reality determined that the search was not pretextual and therefore was constitutionally valid.

 The trial court's order does not indicate whether it considered the officers' arrest of Hauseman or the resulting inventory search to constitute a pretext for conducting an investigatory search. These critical determinations predominantly require findings of historical fact. *United States v. United States Currency,* 726 F.Supp. 259, 261 (W.D.Mo.1989); *People v. Taube,* 864 P.2d 123, 130 (Colo.1993). The trial court is in the best position to determine the credibility of witnesses and to weigh conflicting evidence

in making such factual findings. *People v. Trujillo,* 784 P.2d 788, 792 (Colo.1990).

We have concluded that the trial court applied an incorrect legal standard in resolving the issue raised by Hauseman's suppression motion. Because application of the appropriate standard to the evidence requires resolution of certain disputed factual issues not resolved by the trial court, we conclude that the case should be remanded to the trial court for a determination of the relevant facts and application of the correct legal standard to these facts.

### III

For the foregoing reasons we reverse the trial court's suppression order and remand the case to that court for further proceedings to be conducted in light of this opinion.

MULLARKEY, J., specially concurs, and VOLLACK, J., joins in the special concurrence.

Justice MULLARKEY specially concurring:

While I agree with the majority's decision to remand this case for determination of the pretext question, I write separately because the majority does not clearly define the test to be used by the trial court in making that determination. I am concerned that the majority opinion may be interpreted to mean that, where the police are found to have mixed motives for conducting a search, the dominant motive prevails. Thus, if the trial court were to find that the police were primarily searching for drugs, and the inventory search was secondary, it might consider itself required under the majority opinion to suppress the drugs. That is not the correct test.

The dominant motivation or intent of the police is not dispositive of the motion to suppress. A pretext claim is not established if "the Fourth Amendment activity undertaken is precisely the same as would have occurred had that intent or motivation been entirely absent from the case." 1 Wayne R.

---

8. The trial court did recognize the general rule that police officers have a right to conduct an inventory search pursuant to established procedures "after making a legal arrest." It did not state whether it found Hauseman's arrest to be valid or to be invalid because it was pretextual.

LaFave, *Search and Seizure* § 1.4(e), at 92 (2d ed. 1987) (citing *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), and *Abel v. United States,* 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960)).

Professor LaFave gives several examples to explain the application of this principle, including the following situation, which seems analogous to the present case:

> [I]f X's car is searched in the hope or expectation of finding therein evidence of Crime B, but that search was an inventory which would have been made in any event ... the evidence is admissible.

*Id.* at 93. The treatise characterizes this as "a sound result" and states:

> When the action would have been taken against X even absent "the underlying intent or motivation," there is no *conduct* that ought to have been deterred, and thus no reason to bring the Fourth Amendment exclusionary rule into play for purposes of deterrence.

*Id.* (emphasis in original) (footnotes omitted). Thus, if the trial court finds that the police had mixed motives but that a proper inventory search occurred, the evidence should not be suppressed.

With this addition I concur.

VOLLACK, J., joins in this special concurrence.