**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**David Thomas GEE, Defendant– Appellant.**

**No. 00CA0454.**

Colorado Court of Appeals, Div. V.

Aug. 30, 2001.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Robin K. Auld, Pagosa Springs, CO, for Defendant–Appellant.

Opinion by Judge NIETO

Defendant, David Thomas Gee, appeals the judgment of conviction entered after a trial to the court finding him guilty of possession of marijuana with intent to distribute and possession of more than eight ounces of marijuana. We affirm.

A Colorado State Patrol (CSP) officer stopped defendant's pickup truck for speeding. Based on his observation and contact with defendant, the officer arrested defendant for driving while ability impaired and placed him in the patrol car.

The officer then called for another CSP officer to assist him and for a tow truck to tow defendant's pickup truck. He did not offer defendant the option of leaving the truck by the side of the road.

The officer conducted a search of the pickup truck's cab incident to the arrest of defendant. Although he had smelled the odor of raw marijuana when he stopped defendant, he did not find marijuana in the cab.

After the other officer and a trainee arrived, but before the tow truck arrived, an inventory search of the truck was conducted. In the bed of the pickup truck was an attached, slide-in toolbox that was locked. The officer took the key to the box from the keys in the truck's ignition and opened the toolbox. Inside the toolbox were, among other items, a tin container and a cardboard box. The tin container held a small amount of marijuana, and inside the cardboard box was a plastic bag containing a brick of marijuana that weighed nearly ten pounds.

Defendant was charged with driving while ability impaired, possession of more than eight ounces of marijuana, and possession of marijuana with intent to distribute.

Defendant filed a motion to suppress the evidence seized during the search of the pickup truck, arguing that the search was unlawful and violated his federal and state constitutional rights. Following a hearing, the court denied the motion in a written order.

## I.

■ Defendant contends that the trial court erred in denying his motion to suppress evidence discovered during the inventory search of his truck after he had been arrested for driving while ability impaired. Specifically, he argues that the search violated the United States and Colorado Constitutions because the inventory search was a pretext for an investigatory search without a warrant, the discretion afforded the officers by the CSP manual was unbridled, and the officers violated the procedures set forth in the CSP manual. We disagree.

■ Warrantless searches as well as searches conducted pursuant to a warrant must be reasonable to satisfy constitutional requirements. A warrantless search and any resulting seizure are presumed unreasonable unless the search falls within certain recognized exceptions to the warrant requirement. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *People v. Hauseman*, 900 P.2d 74 (Colo.1995).

One such exception is an inventory search of a vehicle lawfully impounded by law enforcement officials if conducted pursuant to routine administrative procedures. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *People v. Hauseman, supra*. However, the fact that officers may have conducted an inventory search in accordance with procedures does not, of itself, necessarily mean that the inventory search was reasonable. *People v. Hauseman, supra*.

### A.

Defendant first contends that the inventory search was a pretext for an investigatory search for evidence of a crime. He argues that, because the first officer smelled the odor of raw marijuana, the officers were searching for marijuana and used the inventory search as a pretext. We are not persuaded.

■ The scope of an inventory search is limited by the requirement that law enforcement officers exercise any discretion granted them in conducting such a search according to standard criteria and on the basis of something other than a suspicion that there may be evidence of criminal activity. Thus, an inventory search may not be a pretext for a

criminal investigation in order to avoid the more stringent requirement of obtaining a search warrant. *People v. Hauseman, supra.* However, the mere fact that an inventory search may also have had an investigatory purpose does not invalidate it. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

■ In a trial court's determination of whether such a search is pretextual, the officer's subjective intent in carrying out the challenged arrest and resulting inventory is not controlling. Rather, the inquiry must focus on the objective reasonableness of the officer's conduct, and the trial court must determine whether a reasonable officer in the particular circumstances of the case would have conducted such a search absent an illegitimate motive. *People v. Hauseman, supra.*

Here, the trial court found that the inventory search was not pretextual because the officer was following CSP's policy. The policy permitted an officer to have a vehicle towed when a driver was arrested for driving under the influence. The policy required that a complete inventory of the vehicle be conducted when the vehicle was towed. The trial court also found that the officer, in deciding to tow the vehicle, considered the remote location of the vehicle, the possibility of vandalism, the fact that the vehicle was from out of state, and the "rationality of the defendant." These findings show that the trial court considered the officer's decision to be reasonable and based on the need to protect the vehicle, rather than a pretext to search the vehicle. This conclusion is supported by the record and will not be disturbed on appeal.

## B.

■ Defendant next contends that the CSP Operations Manual gave the officers unrestrained discretion to have defendant's vehicle towed. Defendant argues that, because the manual required a complete inventory of the vehicle if it was towed, the discretion to order the tow must be constrained by standardized procedures in order to pass constitutional muster. We do not agree that the officers exercised unrestrained discretion.

The pertinent portions of the manual provide:

II. Vehicles may be towed by an officer as follows:

A. Traffic Hazards

1. If a vehicle is a hazard it should be towed or moved to a place of safety. A reasonable effort to contact the owner should be made before towing if circumstances make it practical.

. . . .

C. Incident to Arrest

. . . .

2. If the driver is arrested for DUI and in the officer's opinion, is capable of making a rational determination whether to leave the vehicle on the highway or have it towed, the driver may be allowed to make that determination.

. . . .

3. If the driver elects to leave the vehicle on the highway, the officer must inform the driver that neither the officer nor the State Patrol is responsible for the safety and well-being of the vehicle.

a. The driver should also be advised that the Patrol will not furnish transportation to reclaim the vehicle; and that if it is left standing on the shoulder more than 24 hours, it will be towed as an abandoned vehicle.

. . . .

IV. Inventory of towed vehicles

A. Whenever a vehicle is seized, impounded, or placed under control of the Colorado State Patrol, an officer will conduct a complete inventory of the vehicle.

1. Inventories shall include any containers, as well as the contents of any locked containers for which there is a key available. Any locked container

for which there is no key available will not be opened for inventory.

■ The interpretation of written documents is a question of law that we review *de novo*. *Weisbart v. Agri Tech, Inc.*, 22 P.3d 954 (Colo.App.2001); *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609 (Colo.App.1998). An interpretation that leads to an absurd result will not be followed. *See People v. Bland*, 884 P.2d 312 (Colo.1994)(interpretation of a statute).

As in *Colorado v. Bertine, supra*, the officers here had the choice of impounding the vehicle or leaving it by the side of the road. Contrary to defendant's contention, the CSP policy did not require the officers to allow defendant to choose whether to leave the vehicle on the highway or have it towed. When read as a whole, the CSP manual, which was incorporated into the trial court's findings, reflects that the decision whether to have the vehicle towed or permit an arrestee to elect to leave the vehicle on the highway is guided by concern for the safety of the driving public, Section II(A)(1), and the safety of the vehicle, Section II(C)(3). Here, the factors considered by the officer reflect that defendant was not given the option of leaving the vehicle on the highway because the officer determined that this could not be safely done.

The record reflects that in applying the procedures in the manual, the officers also followed routine procedures employed by the CSP. The arresting officer testified that he orders a tow for a vehicle about sixty percent of the time when he arrests the driver and that he considered the fact that defendant was alone and from another state. He also stated that he generally would not call for a tow if the driver were a local resident who could call another person to come for the vehicle. The backup officer testified that the location was remote and there was a risk of vandalism if the truck were not towed. Both officers stated that they routinely consider these factors in deciding whether to have a vehicle towed. Further, the backup officer, who was a training officer, stated that these are the procedures he trains recruits to follow.

■ The exercise of discretion by police officers in deciding to conduct an inventory search is reasonable if it is "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine, supra*, 479 U.S. at 375, 107 S.Ct. at 743, 93 L.Ed.2d at 748. "Inventory searches conducted pursuant to standard police department procedures which regulate an officer's discretion in conducting such search are in general considered reasonable." *People v. Hauseman, supra*, 900 P.2d at 77.

The routine procedures followed by the officers in deciding to have the vehicle towed were both written and unwritten. The CSP manual provides written standards based on safety concerns and these standards were supplemented by unwritten but routine policies.

Appellate courts in Colorado have not considered whether the standard procedure that regulates a police officer's discretion in conducting an inventory search must be in writing. In upholding an inventory search by a police department without written standards, the Unites States Court of Appeals for the Third Circuit said, "No Supreme Court case has ever held an inventory search invalid because of the absence of formalized preexisting standards." *United States v. Frank*, 864 F.2d 992, 1003 (3d Cir.1988). In *United States v. Kornegay*, 885 F.2d 713 (10th Cir. 1989), while noting that the record reflected no written procedures for an inventory search, the court upheld an inventory search based on testimony that it was the customary and standard practice to conduct such an inventory.

Other states that have considered the question have found no constitutional requirement that the standards for inventory searches must be in writing. *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993); *State v. Wilson*, 116 N.M. 793, 867 P.2d 1175 (1994); *State v. Weide*, 155 Wis.2d 537, 455 N.W.2d 899 (1990). *But see Commonwealth v. Bishop*, 402 Mass. 449, 523 N.E.2d 779 (1988)(Massachusetts Declaration of Rights requires that standards for inventory searches must be written).

We conclude that unwritten policies of a police department that are routinely used by officers in conducting inventory searches are standards that may be considered in determining the reasonableness of an inventory search.

The prosecution bears the burden of establishing the existence of such unwritten standards and that the inventory search was conducted pursuant to such standards. *See People v. Dandrea*, 736 P.2d 1211 (Colo.1987)(prosecution bears the burden of establishing justification for departures from fundamental constitutional law that warrantless search is presumed unreasonable).

Here, the evidence showed that both officers routinely used the unwritten criteria to supplement the "safety" standard in the CSP manual. There was also evidence that new CSP officers were trained to apply these informal criteria. This evidence was sufficient to establish that the informal criteria were part of CSP policy.

Accordingly, we conclude that the CSP manual, supplemented by the routine procedures followed by the officers, guided and constrained their exercise of discretion in deciding whether to have defendant's vehicle towed. We further conclude that the trial court's finding that the officers followed the CSP's procedures is supported by the record.

## C.

Defendant also contends that the officers violated the standard procedure set forth in the manual when they conducted the inventory search before the tow truck arrived. Specifically, he argues that until his truck was towed, it was not impounded or seized, and therefore, the troopers had no authority to search the vehicle before then.

Contrary to defendant's contention, the manual directs that an inventory be conducted once a vehicle is "seized, impounded, or placed under control of the Colorado State Patrol." Once defendant was arrested and placed in the patrol car, and the tow truck had been called, the pickup was in the officers' control. Thus, it was not necessary for the officers to wait for the pickup to be towed away before carrying out the inventory search.

## II.

Lastly, relying on *People v. Counterman*, 192 Colo. 152, 556 P.2d 481 (1976), defendant contends that the search of the locked toolbox in the bed of the pickup truck violated his state constitutional rights. We do not reach this issue.

Here, the trial court made no reference to the Colorado Constitution in its ruling. The supreme court has held that review is limited to federal constitutional standards in such a situation.

Appellate review of a suppression ruling is limited to the legal bases set forth in the district court's ruling and not necessarily the grounds alleged in the motion. Although the defendant's motion to suppress cited both the United States and the Colorado Constitutions, the district court failed to state in its ruling whether the order of suppression was based on federal or state constitutional standards. In the absence of a clear statement that a suppression ruling is grounded on state as opposed to federal constitutional law, we will presume that a court relied on federal law in reaching its decision. We therefore resolve this case on the basis of federal constitutional standards applicable to an inventory search of an arrestee. . . .

*People v. Inman*, 765 P.2d 577, 578–79 (Colo. 1988) (citations omitted).

Accordingly, we will presume the trial court relied on federal constitutional standards, and we will not address this issue.

The judgment is affirmed.

Judge TAUBMAN and Judge KAPELKE concur.