The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Gabriel A. MARTINEZ, Defendant–Appellant.

No. 05CA0096.

Colorado Court of Appeals, Div. VI.

March 8, 2007.

Certiorari Denied Aug. 13, 2007.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Kimberly K. Caster, Centennial, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Gabriel A. Martinez, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual exploitation of children (possession of sexually exploitative materials), unlawful manufacture of a schedule II controlled substance, and unlawful possession of a schedule II controlled substance. Defendant also appeals the sentence imposed upon the jury's finding that he committed the possession offense as a special offender by having a deadly weapon available for use. We affirm.

## I.

Defendant first argues that the trial court erred by denying his motion to suppress evidence obtained as the result of an allegedly unlawful search. More specifically, defendant claims that police officers acted unreasonably when, during the execution of a search warrant authorizing a search of his father's residence for evidence of crimes committed by his father, the officers searched defendant's bedroom. We disagree.

The Fourth Amendment to the United States Constitution and article II, section 7, of the Colorado Constitution prohibit the is-

suance of a search warrant except upon probable cause supported by oath or affirmation particularly describing the place to be searched and the things to be seized.

The manifest purpose of [the Fourth Amendment's] particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit. Thus, the scope of a lawful search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found."

*Maryland v. Garrison,* 480 U.S. 79, 84–85, 107 S.Ct. 1013, 1016–17, 94 L.Ed.2d 72 (1987)(quoting *United States v. Ross,* 456 U.S. 798, 824, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982))(footnote omitted) (the constitutional reasonableness of police officers' actions in executing a search warrant is to be judged "in light of the information available to them at the time they acted").

■ A trial court's ruling on a motion to suppress presents a mixed question of fact and law. *People v. Medina,* 25 P.3d 1216 (Colo.2001). An appellate court must defer to the trial court's findings of fact if they are supported by competent evidence in the record, but reviews its conclusions of law de novo. *People v. Garcia,* 11 P.3d 449 (Colo. 2000).

Here, police officers applied for a warrant to search a single-story home occupied by defendant's father. The affidavit supporting this application stated that a twelve-year-old girl had informed the officers that defendant's father had fondled her and offered her money to pose for digital photographs. The affidavit also included statements indicating the house contained several computers, a handgun, and marijuana.

Based on this affidavit, the court issued a warrant authorizing a search of the house for child pornography, adult pornography, computer equipment, cannabis, firearms, illegal weapons, and any records relating to the purchase or distribution of child pornography.

When police officers arrived at the house to execute the warrant, they observed two exterior doors, though there were no visible indications that the entrances were for discrete portions of the house. Nor were there any other outward indicia of dual occupancy, such as multiple mail boxes or utility meters.

The interior of the house was divided into a living room, a den, a kitchen, a bathroom, a laundry room, and two bedrooms. Defendant's father and mother were present in the home; defendant was not.

As one of the officers approached the back bedroom, defendant's mother objected. Defendant's mother informed the officer that the room was defendant's, and that she only entered it to do defendant's laundry. However, the door to the bedroom was open, and the officer did not see any indication that defendant's mother was doing laundry.

Officers then entered the room and conducted a search using a dog. The officers discovered a small amount of marijuana, a piece of tin foil with methamphetamine residue, a handgun, a large collection of adult pornographic videotapes, and a film canister containing methamphetamine.

The foregoing facts are not in dispute. However, on appeal, defendant relies on the trial court's finding, made as part of its written order, that defendant's mother "told the officers that defendant rented the bedroom in the back of the home." By contrast, the People rely on the trial court's finding, made as part of its oral ruling at the conclusion of the suppression hearing, that defendant's mother did not tell the officers that defendant paid rent.

The trial court did not reconcile these conflicting findings because, in its written order denying defendant's motion to suppress, the court explained that, although it "could reasonably conclude that defendant's room was not a separate living space," it was instead relying on an exigent circumstances rationale. Specifically, the trial court concluded exigent circumstances existed because defendant's mother could have destroyed files

stored on defendant's computer while the officers were obtaining a supplemental warrant authorizing a search of defendant's room. In addition, the court concluded a second exigency existed because the officers needed to find the handgun identified in the warrant.

We decline to follow the trial court's method of analysis because we question whether sufficient exigency existed to allow immediate police entry into defendant's room. It is not clear to us that the police faced a choice of only two options, that is, either entering immediately or taking the risk that evidence would be destroyed or the gun lost or used in a hostile manner. Because there is no indication in the record that the officers had reason to believe the room was occupied, it appears a third option may have existed: the police could simply have prevented access to the room while they attempted to obtain another warrant. *See Illinois v. McArthur*, 531 U.S. 326, 336–37, 121 S.Ct. 946, 953, 148 L.Ed.2d 838 (2001).

█ In light of this possibility, we consider whether the search of defendant's room was reasonable because the warrant authorized a search of the entire house.

We note that our ability to make that assessment is complicated by the trial court's contradictory findings concerning whether defendant's mother informed the officers that defendant paid rent for the room. Accordingly, for purposes of analysis, we shall view this aspect of the evidence in the light most favorable to defendant and presume that defendant's mother in fact told the officers that defendant was a renter. With that as our premise, we proceed to a review of the relevant authorities.

In *People v. Avery*, 173 Colo. 315, 478 P.2d 310 (1970), our supreme court applied the Fourth Amendment's particularity requirement to a search warrant authorizing the search of a single-family residence that had been converted into a boarding house with eleven rooms occupied as separate dwelling units by college students. In upholding the trial court's ruling, the supreme court set forth the following rule:

[W]hen authority is desired to search a . . . particular room or rooms within a multiple-occupancy structure, the warrant must sufficiently describe the . . . subunit to be searched, either by number or other designation, or by the name of the tenant or occupant; and where . . . the warrant merely describes the entire multiple-occupancy structure by street address only, without reference to the particular dwelling unit or units sought to be searched, it is constitutionally insufficient and the evidence seized pursuant to such a warrant will be suppressed upon proper motion.

*People v. Avery, supra*, 173 Colo. at 319, 478 P.2d at 312.

The next year, the supreme court recognized an exception to the *Avery* rule in *People v. Lucero*, 174 Colo. 278, 483 P.2d 968 (1971), a case in which officers obtained a warrant to search a house believing it to be a single-family residence but, "[a]fter the officers entered the premises, it became apparent that the house was divided into two living quarters on the main floor, with a third on the second floor." *People v. Lucero, supra*, 174 Colo. at 280, 483 P.2d at 969. In upholding the trial court's order denying a motion to suppress evidence of drugs seized from "quarters in the front of the house" occupied by the two co-defendants, the court distinguished *Avery*, as follows:

First, in *Avery*, the trial judge made a specific finding that the officers knew or should have known when they got their warrant that the building involved was a rooming house. In this case, the trial court made a finding, supported by the record, that the officers did not know that these were actually individual apartments until they had entered; and also, that they had every reason to believe that the house was a one-family residence.

Second, in *Avery* the search went beyond the area for which the officers had probable cause on the basis of their affidavit. In this case the only area actually searched was that under the control of the [co-defendants], and the affidavit clearly reveals probable cause for such a search.

*People v. Lucero, supra*, 174 Colo. at 280–81, 483 P.2d at 970.

The supreme court's subsequent decisions demonstrate that the interplay of the *Avery* rule and the *Lucero* exception turns on an objective examination of whether the facts known to the police suggested that the premises to be searched contained more than one dwelling unit. *See People v. Ward,* 181 Colo. 246, 508 P.2d 1257 (1973) (affidavit stating that two addresses were located in basement of single building, that all doors in basement were open, that there were no numbers or letters on doors, and that parties named in affidavit were living and sleeping in each of the apartments, showed common occupancy of two apartments in basement of building; therefore, informant's statement that he had been inside both apartments and had seen marijuana was sufficient to enable magistrate to determine whether there was probable cause to believe an illegal activity was being carried on in place to be searched, even though it was not stated in which apartment marijuana was seen); *People v. Maes,* 176 Colo. 430, 491 P.2d 59 (1971) (affidavit establishing probable cause to search the "Maes apartment" at specified address described with sufficient particularity the premises to be searched, despite fact that there were two basement apartments at the address in question, because the police officer who filed supporting affidavit did not know or have reason to believe that the basement contained more than one apartment, and because that officer executed the warrant which resulted in a search that was in fact limited to the "Maes apartment"); *People v. Alarid,* 174 Colo. 289, 293, 483 P.2d 1331, 1333 (1971) (holding, in a case announced on the same day as *Lucero,* that where officers had reason to know that house to be searched contained more than one unit, and application for search warrant presented no facts showing that there was probable cause to believe that criminal activity was occurring in both units, general search of house by officers that "went beyond the area which they had probable cause to search" was improper).

Here, the first prong of the *Lucero* exception is not at issue. Defendant does not allege, and the record does not suggest, that the police officers had any reason to suspect that the house contained more than one dwelling unit. Thus, the question before us is whether, based on the facts that became known to the officers during the execution of the warrant, it was reasonable for the officers to conduct a search of defendant's room based on the belief that defendant's room was—in the language of the second prong of *Lucero*—"under the control" of the person whose actions formed the basis for the probable cause determination supporting issuance of the search warrant (that is, defendant's father).

In framing this inquiry, we note that, if this were a civil trespass action brought by defendant (as a tenant) against his father (as a landlord), our analysis of whether defendant's father could lawfully enter defendant's room would be limited to the question of whether the father had a *right* of access based on the contractual relationship of the parties. But in the context of the Fourth Amendment, we must conduct a broader inquiry to determine whether, based on the facts known to the officers at the time they executed the warrant, the officers acted reasonably in concluding that defendant's father had the *ability* to access defendant's room for the purpose of concealing incriminating evidence. *See People v. Ward, supra.* As Professor LaFave has explained:

> [W]here a significant portion of the premises is used in common and other portions, while ordinarily used by but one person or family, are an integral part of the described premises and are not secured against access by the other occupants, then the showing of probable cause extends to the entire premises. For example, if three persons share an apartment, using a living room, kitchen, bath and hall in common but holding separate bedrooms which are not locked, whichever one of the three is responsible for the described items being in the apartment could have concealed those items anywhere within, including the bedrooms of his cotenants.

2 Wayne R. LaFave, *Search and Seizure* § 4.5(b), at 529 (3d ed.1996); *see State v. Anderson,* 84 Hawai'i 462, 474–75, 935 P.2d 1007, 1019–20 (1997) (a lock on the defendant's bedroom door did not, by itself, automatically elevate his bedroom to the status of a separate residential unit and, even if the

landlord told police officers that the defendant was renting the bedroom from him before police officers began to search it, the search warrant for the entire dwelling—including defendant's room—could still be executed because the landlord's "statement, in and of itself, did not constitute objectively verifiable evidence from which police officers should have unequivocally recognized that the bedroom was a separate residential unit for which they were constitutionally required to obtain a separate search warrant" and it was reasonable, under the circumstances, for the police "to believe that the bedroom was available to the other occupants as a potential cache for contraband"); *Commonwealth v. Smith,* 898 S.W.2d 496, 501 (Ky.Ct.App. 1995)("where several persons occupy the premises in common, rather than individually, as where the occupants share common living quarters but have separate bedrooms," "a warrant which describes the entire premises will justify a search of the entire premises if all the occupants of the house have access to the entire premises"); *State v. Sheehan,* 217 N.J.Super. 20, 30, 524 A.2d 1265, 1270 (App.Div.1987)("The multiple-occupancy rule is predicated upon the thesis that occupants of a single living unit, whether related or not, generally have at least some access to each other's bedrooms. Each resident's reasonable expectation of privacy is thereby diminished.") (collecting cases); *see also United States v. Ayers,* 924 F.2d 1468, 1480 (9th Cir.1991)(police officers executing a search warrant for a single-family dwelling, based on allegations the defendant's son was selling drugs, could search the defendant's unsecured bedroom because the "most obvious place for the police to search would be the [son's] bedroom," and thus "any other portion of the house would be a more secure hiding place" for contraband).

Here, the police were not obligated to believe the statements of defendant's mother describing her limited access to defendant's bedroom. As noted above, the door to the bedroom was unlocked and open, and the officers did not observe any indication that defendant's mother was in the process of doing defendant's laundry. *See State v. Anderson, supra; see also United States v. Ayers, supra,* 924 F.2d at 1479 (where the

mother of the person named in the search warrant told police officers that her son no longer lived with her and her husband, "[t]he officers had no duty to accept [the mother's] statements as truthful in light of the facts known to them prior to their search").

More to the point, the facts known to the officers established that defendant's father—the person whose unlawful activities formed the basis for the search warrant—had ready access to defendant's bedroom. Under these circumstances, the search of defendant's bedroom for the contraband identified in the search warrant was constitutionally reasonable, irrespective of whether the officers were aware that defendant was paying rent to his parents. *See State v. Anderson, supra.*

Accordingly, we uphold the trial court's ruling denying defendant's motion to suppress. *See People v. Eppens,* 979 P.2d 14, 22 (Colo.1999) (a trial court's ruling may be upheld on any ground supported by the record, regardless of whether that ground was relied upon by the trial court).

II.

Defendant next argues that the special offender provision established by § 18-18-407(1)(f), C.R.S.2006, under which he was sentenced for the conviction for unlawful possession of a schedule II controlled substance, is unconstitutionally overbroad as applied in this case because the handgun seized from his bedroom was inoperable and was not, therefore, "available for use [as] a deadly weapon." We are not persuaded.

"A statute which proscribes conduct which can be prohibited under the police power of the state is overbroad if it also purports to proscribe conduct which cannot validly be prohibited under that power." *People v. Sequin,* 199 Colo. 381, 384, 609 P.2d 622, 624 (1980). However, "[a] statute is presumed to be constitutional, and the party challenging its validity has the burden of proving unconstitutionality beyond a reasonable doubt." *People v. McIntier,* 134 P.3d 467, 474 (Colo.App.2005).

Here, the relevant sentence enhancement provision provides as follows:

Upon a felony conviction under this part 4, the presence of any one or more of the following extraordinary aggravating circumstances designating the defendant a special offender shall require the court to sentence the defendant to the department of corrections for a term of at least the minimum term of years within the presumptive range for a class 2 felony but not more than twice the maximum term of years within the presumptive range for a class 2 felony:

. . .

The defendant used, displayed, possessed, or had available for use a deadly weapon as defined in section 18–19–01(3)(e). . . .

Section 18–18–407(1)(f).

The definition referenced in § 18–18–407(1)(f)provides, in relevant part, as follows: " 'Deadly weapon' means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury: (I) A firearm, whether loaded or unloaded. . . ." Section 18–1–901(3)(e)(I), C.R.S.2006.

Further, § 18–1–901(3)(h), C.R.S.2006, states: " 'Firearm' means any handgun, automatic, revolver, pistol, rifle, shotgun, or other instrument or device capable or intended to be capable of discharging bullets, cartridges, or other explosive charges."

In this case, defendant made his overbreadth challenge at the close of the evidence as part of his motion for a judgment of acquittal. The trial court denied relief, finding that the evidence was sufficient to prove the gun was operable, and that it was "available for use" because it had been discovered on a shelf in the same room where the officers had found methamphetamine.

▮ In ruling on a defendant's motion for judgment of acquittal, a trial court must determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty beyond a reasonable doubt as to each element of the charge.

*People v. Tinkle*, 714 P.2d 919, 921 (Colo. App.1985); *see also People v. Dunlap*, 124 P.3d 780, 793 (Colo.App.2004)(although a sentence enhancement provision is not an element of the offense charged, the enhancing factor must be proved beyond a reasonable doubt).

In *People v. Atencio*, 878 P.2d 147, 150 (Colo.App.1994), a division of this court rejected an overbreadth challenge to § 18–18–407(1)(f), explaining, "[T]he statutory language, 'use, display, possession, or availability for use' are nexus terms. Thus, by the express language of the statute itself, the People are required to show some nexus between the deadly weapon and the drug offense upon which the enhanced sentence is based." The division concluded the enhancement provision was not unconstitutionally overbroad as applied to the defendant because "evidence showing defendant had a loaded . . . handgun in a bedroom in close proximity to the drugs and to where he was arrested was sufficient for the jury reasonably to infer that he had a deadly weapon 'available for use.' " *People v. Atencio, supra*, 878 P.2d at 150.

Here, police officers testified that they searched defendant's bedroom and discovered a vial containing a small amount of a substance later determined to be methamphetamine. The officers also found an unloaded revolver on a shelf in the same room.

One officer testified, based on his experience and training as a small-arms specialist, that the handgun appeared to be capable of firing a bullet. In addition, an inference of operability was established by evidence of the precautions which defendant had taken to secure the weapon. Specifically, the officers testified that the revolver's trigger mechanism was secured with a padlock, and defendant testified that he kept the key to that lock on his keychain.

We conclude the foregoing evidence was sufficient to establish that the gun was operable. Contrary to defendant's suggestion, the fact that the gun was unloaded is immaterial. *See* § 18–1–901(3)(h). Moreover, the proximity of the gun to the methamphetamine was sufficient to establish that it was

"available for use" within the meaning of § 18–18–407(1)(f). *See People v. Atencio, supra,* 878 P.2d·at 151 (rejecting a vagueness challenge to this same provision based on a conclusion that the term "available" should be interpreted, according to the ordinary and commonplace dictionary definition, as meaning "that is accessible or may be obtained" (quoting *Webster's Third New International Dictionary* 150 (1986))). Accordingly, we uphold the trial court's ruling rejecting defendant's claim that § 18–18–407(1)(f) is unconstitutionally overbroad as applied to his conduct.

We do not address defendant's related claim, which he raises for the first time on appeal, that the special offender provision is unconstitutionally vague and infringes on his constitutional right to bear arms because it can be interpreted as applying to inoperable firearms. *See People v. Watkins,* 83 P.3d 1182, 1187 (Colo.App.2003) (it is axiomatic that an appellate court will not consider issues concerning the constitutionality of a statute raised for the first time on appeal).

### III.

■ Defendant contends the evidence is insufficient to support the jury's verdict finding him guilty of unlawfully manufacturing a schedule II controlled substance. Again, we disagree.

The standard of review for assessing the sufficiency of the evidence supporting a guilty verdict is the same as that which pertains to review of the denial of a motion for judgment of acquittal, as set forth above. *See Kogan v. People,* 756 P.2d 945 (Colo. 1988).

Defendant was charged with violating § 18–18–405(1)(a), C.R.S.2006, which provides, as relevant here, that "it is unlawful for any person knowingly to manufacture ... a controlled substance."

In addition, the jury was instructed concerning complicitor liability. Section 18–1–603, C.R.S.2006 ("A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises,

or encourages the other person in planning or committing the offense."); *see Grissom v. People,* 115 P.3d 1280, 1283 (Colo.2005)("Complicity is not a separate and distinct crime or offense. Rather, it is 'a theory by which a defendant becomes accountable for a criminal offense committed by another.'" (quoting *People v. Thompson,* 655 P.2d 416, 418 (Colo.1982))).

The record, when viewed according to the relevant standards, establishes the following facts. During a search of the garage, police officers discovered the following items which—according to the testimony of an officer who was qualified as an expert witness in the field of methamphetamine manufacturing—were indicative of a methamphetamine manufacturing operation: blister packs of pseudoephedrine, lithium batteries, filters, funnels, sodium chloride, a gas mask, and a digital scale. In addition, a forensic examination of a computer located in the living room revealed that both defendant and his father had made online purchases of large quantities of decongestants containing precursor chemicals commonly used in the manufacture of methamphetamine.

Defendant argues that this evidence is insufficient because many of the seized items can be used for nonillicit purposes, and because the officers did not find all the chemicals necessary for manufacturing methamphetamine. We conclude the evidence seized from the garage and the computer, when considered together with the evidence seized from defendant's bedroom, sufficiently supports the jury's verdict.

### IV.

■ Finally, defendant argues that the evidence is insufficient to support the jury's verdict finding him guilty of sexual exploitation of children (possession of sexually exploitative materials). We disagree.

"A person commits sexual exploitation of a child if, for any purpose, he or she knowingly ... [p]ossesses or controls any sexually exploitative material for any purpose...." Section 18–6–403(3)(b.5), C.R.S.2006. "'Sexually exploitative material' means any photograph, motion picture, videotape, print, negative,

slide, or other mechanically, electronically, chemically, or digitally reproduced visual material that depicts a child engaged in, participating in, observing, or being used for explicit sexual conduct." Section 18–6–403(2)(j), C.R.S.2006.

Here, defendant does not dispute that the numerous images depicting children engaged in sexual conduct, which were seized from the computer located in the living room of the house, constituted "sexually exploitative material." Instead, defendant argues that the evidence was insufficient to "connect him" to those materials. We disagree.

The police officer who conducted the forensic examination of the computer from which the child pornography was recovered testified that a person using a password-protected America Online account profile had joined an online list-serve group which distributed e-mails relating to sexual activity with young girls. During cross-examination, defendant admitted that he had used this computer and account profile for his personal correspondence. Defendant, a teacher, also confirmed that he had downloaded numerous nonpornographic photographs of his students to the same computer.

Although we acknowledge the absence of any direct evidence establishing that defendant obtained or viewed the child pornography, we cannot say the circumstantial evidence was insufficient to prove that defendant knowingly possessed the images of child pornography contained on the computer. *See Kogan v. People, supra,* 756 P.2d at 950 (an appellate court should not sit as a thirteenth juror); *People v. Bennett,* 183 Colo. 125, 132, 515 P.2d 466, 469 (1973) ("The same test for measuring the sufficiency of evidence should apply whether the evidence is direct or circumstantial.").

Further, the jury in this case was correctly instructed that proof of exclusive possession was not required. *See generally People v. Warren,* 55 P.3d 809, 816 (Colo.App.2002). Thus, the evidence indicating that defendant's father likely shared possession of the child pornography does not diminish defendant's criminal liability.

The judgment and sentence are affirmed.

Judge GRAHAM and Judge RUSSEL concur.