COLORADO COURT OF APPEALS                    2016COA150

Court of Appeals No. 14CA0959
Adams County District Court No. 13CR1295
Honorable John E. Popovich, Jr., Judge

_____

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Carl A. Brown,

Defendant-Appellant.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WEBB
Hawthorne and Navarro, JJ., concur

Announced October 20, 2016

_____

Cynthia H. Coffman, Attorney General, Carmen Moraleda, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Rachel K. Mercer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Does the Fourth Amendment allow police officers to impound a car *only* because the driver and sole occupant was cited — but not arrested — for driving on a suspended license?  If the answer is "no," then is the ensuing inventory search unlawful?  These are novel questions in Colorado.

¶ 2     A jury convicted Carl A. Brown of possession of a controlled substance (over two grams) and possession of a controlled substance with intent to distribute.  The trial court sentenced him to ten years in the custody of the Department of Corrections, plus five years of mandatory parole.

¶ 3     On appeal, Mr. Brown raises contentions of an illegal impoundment and inventory search during which the drugs were discovered, an unlawful peremptory challenge under *Batson,* improper expert testimony by police officers, prosecutorial misconduct in closing argument, failure to merge the convictions, and the trial court's misunderstanding of its sentencing discretion.  Because we agree that the impoundment and inventory search of

Mr. Brown's car violated the Fourth Amendment,[1] we reverse and remand for the trial court to grant his motion to suppress.[2]

## I. Impoundment and Inventory Search

### A. Background

¶ 4 Aurora police officers pulled Mr. Brown's car over after he failed to make a complete stop at a stop sign.[3] During the traffic stop, the officers learned that Mr. Brown was driving on a suspended license. Based on this violation, they chose to issue Mr. Brown a summons, but not to arrest him. Still, the officers decided to impound his car. While waiting for the tow truck, one of them performed an inventory search and found the drugs. Only then did they arrest Mr. Brown.

### B. Preservation

¶ 5 The Attorney General asserts that Mr. Brown failed to preserve his contention that impoundment of his car was not

---

[1] Mr. Brown does not make a separate argument based on the counterpart provision of the Colorado Constitution. *See* Colo. Const. art. II, § 7.

[2] Given this conclusion and because Mr. Brown's remaining contentions are unlikely to arise on retrial, we need not address them.

[3] Mr. Brown does not contest the validity of the traffic stop.

constitutionally reasonable, given an exception — discussed more fully below — to the warrant requirement that allows impoundment without a warrant under some circumstances. This assertion misses the mark for two reasons.

¶ 6 First, during the suppression hearing, defense counsel argued:

> [The officers] were going to issue a summons and release him. You get to at that point whether or not they had a right to search his car, inventory search his car. And the officer had the discretion, pursuant to their manual, to leave the car on the scene if they can verify the ownership, which they admitted on the stand it was, in fact, Mr. Brown's car. It had valid insurance, registration and plates. At that point the stop should have been over. No further contact should have been conducted.
>
> . . . .
>
> This is an attempt to, in essence, create their own reason to inventory search this car in order to verify an anonymous tip that they were unable to verify earlier.

¶ 7 Second, after the prosecutor defended the impoundment, the trial court ruled against Mr. Brown on the issue. *See People v. Syrie*, 101 P.3d 219, 223 n.7 (Colo. 2004) (An issue is preserved if "the trial court [has an] adequate opportunity to make factual findings and legal conclusions.").

## C. Standard of Review

¶ 8    A trial court's ruling on a motion to suppress presents a mixed question of fact and law. *People v. Martinez*, 165 P.3d 907, 909 (Colo. App. 2007). We defer to the trial court's findings of fact if they are supported by competent evidence in the record, but we review its conclusions of law de novo. *Id.* Of course, "[w]e review de novo the trial court's ultimate legal conclusion of whether a seizure violated constitutional prohibitions against unreasonable searches and seizures." *People v. Funez-Paiagua*, 2012 CO 37, ¶ 6.

## D. Law

### 1. Inventory Searches

¶ 9    The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. And under the Fourth Amendment, searches conducted without a warrant are presumptively unreasonable, unless the search comes within an exception to the warrant requirement. *People v. Vaughn*, 2014 CO 71, ¶ 14. The prosecution bears the burden of overcoming this presumption by establishing one of these exceptions. *People v. Winpigler*, 8 P.3d 439, 443 (Colo. 1999).

¶ 10    This case concerns the exception that "permits officers to conduct an inventory search of a vehicle without a warrant based on probable cause when that vehicle is lawfully impounded by law enforcement officials." *Vaughn*, ¶ 14; *see Colorado v. Bertine*, 479 U.S. 367, 371-72 (1987) (Because inventory searches further police caretaking procedures, "[t]he policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause.") (citation omitted). This exception exists because an inventory search does not seek to obtain evidence but is "designed to protect the owner's property while it is in police custody, to insure against claims concerning lost or damaged property, and to protect the police from any danger posed by the contents of the vehicle." *Pineda v. People*, 230 P.3d 1181, 1185 (Colo. 2010), *disapproved of on other grounds by Vaughn*, ¶ 11 n.7.

¶ 11    Still, the decision to impound a vehicle and the ensuing inventory search are separate processes, both of which "must meet the strictures of the Fourth Amendment." *United States v. Duguay*, 93 F.3d 346, 351 (7th Cir. 1996); *accord King v. Commonwealth*, 572 S.E.2d 518, 520 (Va. Ct. App. 2002) ("The validity of the

5

impoundment is a question separate from the validity of the subsequent inventory search and must be determined first."). Thus, because the act of impoundment "'gives rise to the need for and justification of the inventory [search],' the threshold inquiry when determining the reasonableness of an inventory search is whether the impoundment of the vehicle was proper." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (alteration in original) (quoting *State v. Goodrich*, 256 N.W.2d 506, 510 (Minn. 1977)).

¶ 12    Mr. Brown acknowledges — as he must — that "*[a]fter* validly impounding a vehicle, an officer may make an inventory search of its contents." *People v. Milligan*, 77 P.3d 771, 776 (Colo. App. 2003) (emphasis added).  Instead, he asserts that because the prosecution failed to prove the legality of the impoundment, a threshold Fourth Amendment violation occurred, which fatally tainted the inventory search.[4]  Examining this assertion requires us to take a closer look at the law of impoundment.

---

[4] At oral argument, the Attorney General conceded that if the impoundment fails, it takes the inventory search down as well.

## 2. Lawful Impoundment

¶ 13    To begin, everyone would agree that "[t]he impoundment of an automobile is a seizure within the meaning of the Fourth Amendment." *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005). Even so, an impoundment by the police without a warrant satisfies the Fourth Amendment if it occurs in furtherance of "public safety" or "community caretaking functions," such as removing "disabled or damaged vehicles" and "automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976) (citation omitted).[5] Like the exception for inventory searches, this exception to the warrant requirement recognizes that the purpose of the impoundment is not to obtain evidence. In every inventory search case, then, the dilemma between a seizure and the lack of a warrant

---

[5] Impoundment may also occur when it is authorized by a state statute. *See, e.g.*, *United States v. Gillon*, 348 F.3d 755 (8th Cir. 2003) (impoundment lawful here where statute authorized impoundment incident to citation for operating vehicle without financial liability coverage); *United States v. Rios*, 88 F.3d 867 (10th Cir. 1996) (state statute authorizes impoundment of improperly registered vehicle). But the Attorney General does not cite to any such Colorado statute.

or other permissive court order must be resolved by determining whether "the state [has] an interest in impoundment that outweighs the individual's Fourth Amendment right to be free of unreasonable searches and seizures." *Gauster*, 752 N.W.2d at 502.

¶ 14 As part of the legal framework for this determination, when departmental regulations give police the discretion to impound a vehicle, often "decisions to impound will be upheld as long as that discretion has been exercised according to standard criteria." *Milligan*, 77 P.3d at 776; *see Bertine*, 479 U.S. at 374 ("[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure."). But not always.

¶ 15 "[T]he fact that officers may have conducted an inventory search in accordance with procedures does not, of itself, necessarily mean that the inventory search was reasonable." *People v. Gee*, 33 P.3d 1252, 1254 (Colo. App. 2001); *accord People v. Hicks*, 197 Colo. 168, 171, 590 P.2d 967, 969 (1979) ("The words 'routine inventory search' are not a 'talisman in whose presence the Fourth Amendment fades away.'" (quoting *Coolidge v. New Hampshire*, 403

8

U.S. 443, 461 (1971))), *overruled by People v. Bannister*, 619 P.2d 71 (Colo. 1980); *see also United States v. Sanders*, 796 F.3d 1241, 1250 (10th Cir. 2015) ("Protection against unreasonable impoundments, even those conducted pursuant to a standardized policy, is part and parcel of the Fourth Amendment's guarantee against unreasonable searches and seizures."). Thus, by any fair account, a decision upholding an inventory search based on a policy — but without asking whether the criteria for the underlying impoundment satisfy the Fourth Amendment — is like the emperor with no clothes.

## E. Analysis

¶ 16 Although a written copy of the Aurora department policy is not in the record, standard policies regulating inventory searches do not need to be in writing. *Gee*, 33 P.3d at 1256-57. Rather, "unwritten policies of a police department that are routinely used by officers in conducting inventory searches are standards that may be considered in determining the reasonableness of an inventory search." *Id.*

¶ 17 At the suppression hearing, the officer who ordered the impoundment testified that when Mr. Brown was pulled over, his

car was "off the roadway" and not blocking traffic.  Still, the officer said that the car was impounded because "[Mr. Brown's] license was suspended."  He added that "[Mr. Brown] was detained . . . [and] [h]e would have been issued a summons and released there and the vehicle impounded."

¶ 18    As to the policy, the officer explained that "[p]art of our department policy is we impound vehicles with a suspended license" — "Our routine procedure is that if they don't have a valid driver's license, the vehicle is impounded."  The officer also testified that the decision to impound is "up to the officer's discretion."

¶ 19    For the prosecutor, so far, so good.  But then the following cross-examination occurred:

> Q: . . . You have the discretion, correct?
>
> A:  Yes.
>
> Q:  And part of the circumstances around that are whether the car is blocking traffic, impeding traffic?
>
> A:  Yes.
>
> Q:  Whether the person is the owner of the car?
>
> A:  Yes.

Q: Did you give Mr. Brown the option . . . of whether he wished his car to remain on scene or to be towed?

A: No.

Q: Why not?[6]

A: He already demonstrated that he is going to drive his vehicle on a suspended license.

¶ 20 True enough, as the trial court found, the department's policy gave the officer discretion to impound Mr. Brown's car because his license was suspended. But removing the potential for abuse of unbridled discretion moves the Fourth Amendment analysis forward only half way. More analysis is required because "strict adherence to standard police department procedures . . . does not necessarily satisfy the Fourth Amendment reasonableness standard." *People v. Hauseman*, 900 P.2d 74, 78 (Colo. 1995), *disapproved of on other grounds by Vaughn*, ¶ 11 n.7; *see Miranda*, 429 F.3d at 864 ("We begin with the premise . . . that the decision to impound pursuant to the authority of a city ordinance and state

---

[6] For those who read this opinion without the benefit of significant trial experience, one of the time-honored rules of cross-examining a witness is "never ask why."

11

statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment . . . .").

¶ 21 And herein lies the problem: the prosecutor failed to prove that apart from Mr. Brown driving on a suspended license, any other fact made the impoundment reasonable. For example, the prosecutor did not even ask the officer whether Mr. Brown lacked proof of insurance or had produced proper registration. And in response to defense counsel's question, the police officer testified, "I don't recall who the vehicle was registered to." Nor did the prosecution present any evidence that the location of the car imperiled other drivers, a criterion under the policy.

¶ 22 Consistent with the prosecutor's narrow position, the trial court found only that Mr. Brown's license was suspended and the officer had relied on the policy, neither of which was disputed. Yet, the following evidence — also undisputed — weighs against the impoundment having been reasonable, on three levels.

¶ 23 First, consider the officer's testimony that he had planned to release Mr. Brown after issuing him a summons for driving on a suspended license, not to arrest him. *See People v. Grenier*, 200 P.3d 1062, 1070 (Colo. App. 2008) (Impoundment was reasonable

where "at the time defendant was taken into custody, there was no one else available to take the car . . . [and] the car could not be left unattended because, considering the area of town, the car would likely not be there when defendant returned."); *see also Milligan,* 77 P.3d at 777 (An officer's impoundment decision was upheld where "a vehicle was driven illegally and the driver has been arrested" and "the practice is to impound the vehicle, unless a passenger has a valid driver's license and is then allowed to drive the car away."); *Gee,* 33 P.3d at 1255 (There was no Fourth Amendment violation where a "policy permitted an officer to have a vehicle towed when a driver was arrested for driving under the influence . . . [and] the officer, in deciding to tow the vehicle, considered the remote location of the vehicle, the possibility of vandalism, the fact that the vehicle was from out of state, and the 'rationality of the defendant.'").

¶ 24      Unlike such cases where the driver was arrested, because Mr. Brown could have remained to safeguard his car, the police

13

caretaking function would not have been implicated.[7]  For this reason, "cases in which the driver of a vehicle is arrested are fundamentally different from cases in which the driver remains free."  *State v. Rohde*, 852 N.W.2d 260, 266 (Minn. 2014).  As the court explained in *Gauster*, 752 N.W.2d at 506, "[w]hile the need for the police to protect the vehicle and its contents is often present when police officers arrest a driver," a driver who is not arrested "never relinquishe[s] control of his vehicle and ha[s] no need to leave it unattended."  *Cf. People v. Litchfield*, 918 P.2d 1099, 1105 (Colo. 1996) ("Because [defendants] would have maintained control over the car and their belongings within it while the officers checked with the rental company, there was no need for the officers to inventory the contents of the car.").  Stated in the simplest terms,

---

[7] The Attorney General relies extensively on *People v. Vaughn*, 2014 CO 71, where the supreme court found an inventory search to be valid where the defendant's vehicle had been lawfully impounded. Although this case also involved impoundment based on a suspended license, because the driver was arrested, it is inapposite. Similarly, *United States v. Sanders*, 796 F.3d 1241, 1250 (10th Cir. 2015), on which the Attorney General relied at oral argument, involved the impoundment of a vehicle parked on private property, after the driver had been arrested.  And in any event, the Court of Appeals held the impoundment unlawful under the Fourth Amendment.

"[t]he state owes no legal duty to protect things outside its custody from private injury." *Duguay*, 93 F.3d at 353. Without this justification the impoundment may still stand, but its legal foundation is weakened.

¶ 25    Second, consider that Mr. Brown's inability to lawfully drive the car does not alone make the impoundment reasonable. *See Taylor v. State*, 842 N.E.2d 327, 333 (Ind. 2006) ("The fact that [defendant] was unable to drive his car because his permit was suspended does not in this instance support a conclusion that the car itself was imperiled or constituted a potential hazard which [the police officer] reasonably believed he needed to address."); *see also* 3 Wayne R. LaFave, *Search and Seizure* § 7.3(c) (5th ed. 2012) (When a "driver is only ticketed but cannot himself operate the car because of an expired license, impoundment of the vehicle is improper unless the driver is 'unable to provide for its custody or removal.'") (citations omitted).

¶ 26    Jerking Mr. Brown's inability lawfully to drive out from under the already shaky impoundment is appropriate because the prosecutor also did not present any evidence of generally accepted reasons to impound, such as that the car was in an unsafe location

or impeding traffic. *See Miranda*, 429 F.3d at 866 ("An officer cannot reasonably order an impoundment in situations where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers."); *see also Thompson v. State*, 966 S.W.2d 901, 905 (Ark. 1998) ("[I]t is permissible for an officer to impound and inventory a vehicle when the driver is physically unable to drive the car, *and* leaving it on the side of the road would create a safety hazard.") (emphasis added); *cf. People v. Trusty*, 183 Colo. 291, 295, 516 P.2d 423, 425 (1973) (An inventory search was reasonable where the vehicle "was parked in a high-risk area, the parking lot of a tavern; it had out-of-state license plates; the whereabouts of its owner were unknown; and [defendant], who was intoxicated and subsequently placed under arrest, had voluntarily turned over the keys to the auto to the officer and invited a search of the vehicle.").

¶ 27    Third, consider that the suppression hearing record is barren of any reason why Mr. Brown could not have called someone else to lawfully drive his car or summoned a tow truck himself, options

that the officers did not extend to him.[8]  After all, because the police did not plan on arresting him, he would have needed to arrange for his own transportation.  Those arrangements could have been as a passenger in his car, being driven by someone else, or sitting in the cab of a tow truck that he had summoned.  *Compare King*, 572 S.E.2d at 521 ("[T]he owner of the vehicle[] was not taken into custody or removed from the scene and, although he could not personally drive the vehicle, the evidence failed to show he was unable to arrange for its removal to another location, or to safeguard his property."), *with Commonwealth v. Daley*, 672 N.E.2d 101, 103 (Mass. 1996) (Impoundment of an unregistered and uninsured vehicle was reasonable because "the officers could not permit the continued operation of this illegal vehicle on the public roadways, nor could they leave the vehicle unattended on the

---

[8] We recognize that in *Colorado v. Bertine*, 479 U.S. 367, 373 (1987), the Supreme Court rejected the argument that the police are required to give an arrested driver "an opportunity to make alternative arrangements" before impounding his or her vehicle. But again, that case involved impoundment after an arrest.  *See State v. Rohde*, 852 N.W.2d 260, 266 (Minn. 2014) (distinguishing *Bertine* because "when the driver is not arrested, it is 'not necessary for the police to take [the] vehicle into custody in the first place'") (alteration in original) (citation omitted).

shoulder of a busy main road.").  This lack of evidence leaves the impoundment teetering.

¶ 28　　Given all this, one might well ask whether the impoundment can be saved from toppling under its own weight by the police officer's testimony that Mr. Brown had "already demonstrated that he is going to drive his vehicle on a suspended license."  At first blush, impounding a vehicle to prevent a driver with a suspended license from operating it would further public safety.

¶ 29　　But the prosecutor did not rely on this testimony below, and on appeal, the Attorney General does not do so either.  *See Syrie,* 101 P.3d at 223 (Where the "prosecut[ion] chose not to argue that the search . . . was incident to lawful arrest" at the suppression hearing, it "surrender[ed]" that argument and "conceded th[e] issue."); *see also Moody v. People,* 159 P.3d 611, 614 (Colo. 2007) ("Our starting point is the basic principle of appellate jurisprudence that arguments not advanced on appeal are generally deemed waived.").

¶ 30　　Nor did the trial court find that the officers had impounded the car because otherwise Mr. Brown would have driven off, after they left.  And from the officer's conclusory statement, we do not know

18

whether Mr. Brown told the officers that he would drive off as soon as they left or if they only inferred that he would do so.  *See Moody*, 159 P.3d at 616 (Noting "the hazards encountered by the court of appeals in navigating sua sponte review: it placed itself in the tenuous position of resolving fundamental facts that had not been identified during the suppression hearing.").

¶ 31 True enough, an appellate court "can affirm for any reason supported by the record, even reasons not decided by the trial court."  *Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 7.  But applying this principle sua sponte runs counter to the teaching of *Moody*. And in any event, without further explanation, this testimony does not provide sufficient support for impounding Mr. Brown's car.  *See Miranda*, 429 F.3d at 866 (rejecting argument that "impoundment satisfied the 'caretaking' function by deterring [defendants] from repeating this illegal activity in the future").

¶ 32 In the end, we agree with the well-reasoned cases holding that even where a department policy allows officers to impound a vehicle, the decision to impound must still satisfy the requirements of the Fourth Amendment.  Because the prosecution did not meet its burden to show that impounding Mr. Brown's car was

reasonable, the inventory search was unlawful. And because the search was unlawful, any evidence found should have been suppressed. *See People v. Prescott*, 205 P.3d 416, 422 (Colo. App. 2008) ("[E]vidence obtained by the police through unlawful means . . . is inadmissible and must be suppressed.").[9]

## II. Conclusion

¶ 33    The judgment is reversed and the case is remanded for the trial court to grant the motion to suppress and for proceedings consistent with this opinion.

JUDGE HAWTHORNE and JUDGE NAVARRO concur.

---

[9] We recognize that the exclusionary rule is "applicable only where its remedial objectives are thought most efficaciously served — that is, where its deterrence benefits outweigh its substantial social costs." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (citation omitted). However, because the Attorney General did not argue against suppression on this basis, we decline to do so sua sponte.

20